**STATE of Minnesota, Respondent,**

v.

**Kenneth Reed FILIPI, Appellant.**

**No. 50025.**

Supreme Court of Minnesota.

Aug. 29, 1980.

Louis D. Bass and John L. Holahan, Jr., Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Robert F. Carolan, County Atty., and Richard A. Enga, Asst. County Atty., Hastings, for respondent.

Heard by OTIS, ROGOSHESKE, and TODD, JJ., and considered and decided by the court en banc.

OTIS, Justice.

Defendant Kenneth Filipi was tried without a jury and convicted of unlawful possession, with intent to sell a schedule I controlled substance (marijuana), and unlawful possession of a schedule II controlled substance (cocaine). He here contends there was not probable cause to arrest him; that Minneapolis police had no authority to make the arrest in Dakota County; and that the court should have suppressed as evidence marijuana seized from a closed duffel bag in the locked trunk of defendant's automobile. We reverse the marijuana conviction and affirm the cocaine conviction.

Defendant's arrest was the product of a Minneapolis police department investigation of one Pinkney, who resided in St. Louis Park, a Minneapolis suburb. An undercover policeman had purchased marijuana from Pinkney in early 1978, and on April 4, 1978, another order was placed. Pinkney agreed to deliver the marijuana later that day.

After placing Pinkney's residence under surveillance, the police saw him drive a silver EL Camino pickup from his home to a Howard Johnson's Motel parking lot in Bloomington, where he met a party, matching defendant's description, in a late 1960s model tan Pontiac automobile. The officers observed what appeared to be a transfer of money and recorded the Pontiac's license number. Following the meeting the El Camino headed west on Interstate 494. The Pontiac was followed until it was lost in the Lakeville/Farmington area of Dakota County.

Pinkney returned to his home and contacted the undercover officer to arrange delivery of the marijuana. When the officer arrived to take delivery, he arrested Pinkney.

Pinkney then agreed to cooperate with the police by placing another order with his supplier. An officer dialed the number supplied, and Pinkney arranged for delivery of

ten pounds of marijuana in St. Paul at 3:45 that afternoon. Pinkney also informed police that his source, a man named Ken, lived in Lakeville with a man named David Chambers. The phone number supplied by Pinkney was listed to a David Chambers at a Lakeville address. A check of the license number showed that the Pontiac observed earlier was registered to defendant, Ken Filipi.

By 2:00 that afternoon Minneapolis policemen were in position to observe the Chambers residence in Lakeville. The Pontiac was parked in the driveway. Shortly after 3:00 defendant departed the house, placed a duffel bag in the trunk of the auto, and drove off. The policemen followed him for a short distance, then stopped and arrested him, purely coincidentally in front of the Eagan city police station. Defendant was taken into the station where he was advised of his rights and searched. The search yielded a cylinder containing cocaine.

Outside the station another officer, without defendant's permission, removed the keys from the Pontiac's ignition and opened the locked trunk. Inside was the closed duffel bag that defendant had earlier placed there. Police opened the bag and found several plastic garbage bags wrapped around a brick of marijuana.

Following these events the Dakota County sheriff's office was contacted. Pursuant to a warrant the Chambers residence was searched and more items were seized. All items seized were taken to the Minneapolis Police Department.

1. Defendant contends that police lacked probable cause to arrest him, primarily because the arrest was based on hearsay information and Pinkney was not a credible informant.

Probable cause to arrest exists when reasonable grounds for suspicion are accompanied by circumstances sufficiently strong in themselves to warrant a cautious person in believing the accused to be guilty of a crime. *State v. Brazil*, 269 N.W.2d 15 (Minn.1978).

Within prescribed limits hearsay may be considered in determining whether probable cause exists. Such information may be regarded where (1) the informant acquires his knowledge of the reported activity in a reliable manner, and (2) the police officer has a sound basis for believing that the informant is credible ·or that the information is otherwise reliable. *State v. LaBarre*, 292 Minn. 228, 235, 195 N.W.2d 435, 440 (1972). *See also Spinelli v. United States*, 393 U.S. 410, 415, 89 S.Ct. 584, 588, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). Even where an informant is not credible, his information may be sufficiently reliable where it is supported by "corroborating factors [that] provide a substantial basis for crediting the informant's tip * * *." *State v. Causey*, 257 N.W.2d 288, 291 (Minn.1977).

There is no doubt that Pinkney came upon his information in a reliable manner—direct dealings with defendant. Moreover, whether or not Pinkney could properly be characterized as credible, independent information obtained prior to defendant's arrest corroborated the hearsay. *See United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). For this reason the information supported a finding of probable cause.

2. Defendant also contends that his arrest was unlawful because it occurred in Dakota County, outside the jurisdiction of the Minneapolis police officers who arrested him.

The record furnishes no evidence that defendant was ever physically within the City of Minneapolis, much less that he committed any crime within the city. Defendant was arrested for a crime committed entirely outside the city and, therefore, outside the bailiwick of the arresting officers. These Minneapolis policemen were not pursuing a suspect who was fleeing their jurisdiction or had escaped from their custody, nor were they acting in obedience to a jurisdictional authority. Therefore, they had no police authority to arrest defendant outside their jurisdiction. Minn.Stat.

§ 629.40 (1978).[1] *See also State v. Mastrian,* 285 Minn. 51, 54–55, 171 N.W.2d 695, 698–99 (1969), cert. denied, 397 U.S. 1049, 90 S.Ct. 1381, 25 L.Ed.2d 662 (1970).

Nevertheless, we find the arrest lawful. A police officer outside his jurisdiction is not completely stripped of the power to arrest. It has been stated:

> Beyond his own bailiwick, ordinarily an officer has only the arrest powers of a private citizen, such as these may be, in the district where the arrest is made. Thus, if an arrest by a private citizen would be lawful under the existing circumstances, an arrest by an officer away from his own bailiwick would be lawful, otherwise not. This rule has been applied to arrests made by city policy officers outside the confines of their municipalities, and also to peace officers of one state operating in another.

E. Fisher, *Laws of Arrest* § 142 (1967) (footnotes omitted). We subscribe to that rule. *See Smith v. Hubbard,* 253 Minn. 215, 224, 91 N.W.2d 756, 764 (1958).

In this state the power of private persons to arrest is governed by Minn.Stat. § 629.37 (1978), which provides:

> A private person may arrest another:
> (1) For a public offense committed or attempted in his presence;
> (2) When such person has committed a felony, although not in his presence; or
> (3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

In this case a felony had in fact been committed and the arresting persons had probable cause to believe that defendant committed it. This arrest, therefore, was within the statute and was one a private person would have been entitled to make.

Defendant, nevertheless, contends that because these policemen acted under color of their office, they should not be vested with the arrest authority of private persons. He relies on *Collins v. State,* 143 So.2d 700 (Fla.App.1962), where uniformed policemen outside their jurisdiction knocked on a motel door and were admitted by reason of their official position. Upon entering they saw a marijuana plant and arrested the occupant. The state argued that the arrest was proper because the policemen saw marijuana in plain view, which meant a felony was being committed in their presence and justified a citizens arrest. The arrest, however, was held unlawful because the police officers had established the prerequisite for a citizens arrest only by obtaining access to defendant's private living quarters under color and authority of their office and without a "valid basis in law for the intrusion." *Id.* at 703.

This case is not comparable. Here the police officers, while outside their jurisdiction, did not establish the basis for the private arrest by using incidents of their authority, e. g., badges and uniforms, to induce defendant to surrender protections he enjoyed against private citizens generally. The appearance of police authority entered the picture only after a valid basis for the arrest had been established.

While we note that it would have been preferable had these Minneapolis police officers informed jurisdictional authorities of their investigation, we nevertheless hold that the arrest was lawful as within the authority conferred on private persons by Minn.Stat. § 629.37 (1978).

3. Defendant finally contends that the warrantless seizure of marijuana from a

1. Minn.Stat. § 629.40 (1978) provides:

ARRESTS, ANYWHERE IN STATE.

Subdivision 1. In any case wherein any sheriff, deputy sheriff, police officer, marshal, constable, or peace officer may by law, either with or without a warrant, arrest any person for or upon a charge of any criminal offense committed without his jurisdiction, and the person to be arrested escapes from or is out of the county, city or town, the officer may pursue and apprehend the person to be arrested anywhere in this state.

Subd. 2. When any sheriff, deputy sheriff, police officer, marshal, constable, or peace officer shall, in obedience to the order of a court, or proper police authority, or in fresh pursuit as provided in subdivision 1, be outside of his jurisdiction he is serving in his regular line of duty as fully as though he was within his jurisdiction.

closed duffel bag taken from the locked trunk of his automobile was unconstitutional and that the evidence should have been suppressed. We agree.

■ The search at issue was conducted under color of police authority and the limits of the Fourth Amendment apply. The state contends that this warrantless search was justified by exigent circumstances and the so-called "automobile exception."[2] to the warrant requirement. The scope of that exception, however, has been recently limited by the Supreme Court in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).

■ Both *Chadwick* and *Sanders* scrutinized warrantless searches of containers that were located in motor vehicles. *Chadwick* involved contraband seized from a locked footlocker that had been removed from an automobile trunk. *Sanders* involved marijuana seized from an unlocked suitcase in an automobile. In both cases probable cause existed, but the "automobile exception" was ruled inapplicable and the evidence was suppressed. These searches were outside the exception for two reasons. First, suitcases and footlockers are used as repositories of personal effects, and therefore, are surrounded by a greater expectation of privacy than a motor vehicle. Second, and perhaps more important, the Court held that exigent circumstances, the backbone of the automobile exception, normally disappear once the object to be searched is securely within police control and beyond the defendant's reach.[3] That the container was situated inside an automobile is not significant.

[T]he exigency of mobility must be assessed at the point immediately before the search—after the police have seized

the object to be search and have it securely within their control. Once police have seized a suitcase, * * * the extent of its mobility is in no way affected by the place from which it was taken. Accordingly as a general rule there is no greater need for warrantless searches of luggage taken from automobiles than of luggage taken from other places.

*Sanders*, 442 U.S. at 763–64, 99 S.Ct. at 2593 (citations and footnotes omitted). In the same vein, the problems entailed in securing a suitcase, duffel bag, or other like container are significantly less than the burdens of securing a motor vehicle. *Id.* See also *United States v. Calandrella*, 605 F.2d 236 (6th Cir. 1979); *United States v. Meier*, 602 F.2d 253 (10th Cir. 1979); *United States v. Johnson*, 588 F.2d 147 (5th Cir. 1979).

■ The *Chadwick/Sanders* rule required that the evidence seized from the duffel bag be suppressed. Because this evidence was central to the conviction for possession of marijuana with intent to sell appellant is entitled to a new trial as to that charge.[4] However, the cocaine taken from defendant's person was seized in the course of a lawful search, incident to arrest. Moreover, the evidence of defendant's possession of cocaine was so overwhelming and the marijuana and cocaine charges so distinct that we are of the opinion and hold that the failure to suppress the marijuana as evidence was harmless error as to the cocaine conviction.

Affirmed in part, reversed in part.

AMDAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

**2.** See generally *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); 2 W. LaFave, *Search and Seizure* § 7.2 (1978).

**3.** Other "exigent circumstances" may exist when there is reason to believe the container

holds explosives or other such dangerous instrumentalities. See *Sanders*, 442 U.S. at 763 n. 11, 99 S.Ct. at 2593 n. 11; *United States v. Johnson*, 588 F.2d 147, 151 n. 5 (5th Cir. 1979).

**4.** See *City of Moorhead v. Miller*, 295 N.W.2d 548 (Minn.1980).