STATE of Minnesota, Appellant,

v.

Scott Alan SCHINZING, Respondent.

No. C1–83–829.

Supreme Court of Minnesota.

Dec. 23, 1983.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty. by Steven C. DeCoster, Asst. County Atty., St. Paul, for appellant.

Richard L. Gill, Gill & Brinkman, St. Paul, for respondent.

SIMONETT, Justice.

This is an expedited pretrial appeal by the state from an order of the district court granting a motion to suppress evidence on fourth amendment grounds in a prosecution of defendant for possessing marijuana with intent to sell, distribute, or deliver. We remand for further proceedings.

At 3:20 p.m. on March 14, 1983, Officer Joseph A. Zappa of the Maplewood Police Department left the junior high school where he was employed as the school liaison officer, and began driving west on Holloway, a lightly-traveled road on the border between Maplewood and North St. Paul. Since he was traveling west, Zappa was in North St. Paul, just barely out of his jurisdiction.

As he approached McKnight Road, Zappa noticed a car with a driver and two passengers in front of him, also going west. The car had no license plate but had a temporary Florida registration displayed in the rear window. There was a chainlike object hanging from the rearview mirror. Shortly before reaching Fifth Street the car stopped in the middle of the road and then proceeded to make a very wide right turn onto Fifth Street, crossing over into the opposite lane of traffic. Zappa followed the car around the corner and then signaled it to pull off the road.

At the omnibus hearing, Zappa stated that a number of things prompted him to stop the car, including the fact that the car had only a temporary Florida registration instead of a license plate, the car had the chainlike object illegally hanging from the rearview mirror, the driver had illegally stopped the car in the traffic lane and appeared to be lost or confused, and the driver had executed the right turn improperly. Zappa stated that he was not necessarily going to ticket the driver but felt there was enough suspicious activity to justify stopping the car.

Zappa parked his car behind the stopped car. The driver, defendant, got out and started walking toward him. Zappa testified that when the car door opened he saw a knife "stuck in the upholstery of the car [door]." Defendant called out Zappa's name, but Zappa testified that he did not recognize defendant until defendant gave

him his name. Defendant, who was then 19 years old, had once been a student at the junior high school where Zappa was liaison officer. When Zappa asked defendant for his license, defendant said that it had been revoked. Zappa then asked defendant to sit in the rear of the squad car while he ran a license check on defendant; that check corroborated what defendant said.

Zappa then contacted North St. Paul police and asked them to send over an officer. In the meantime, Zappa told defendant that he would ask the officer to simply cite defendant and then release him on his signature. Zappa testified that, under this scenario, defendant would not have been allowed to continue driving but either one of his passengers, assuming they were licensed, could have driven the car for defendant, with defendant as a passenger. Zappa asked defendant who his passengers were and defendant gave their names. Zappa immediately recognized them as names of former students at the junior high school. He thought they were probably juveniles in the 17- to 18-year-old age range.

Officer Michael Wolf of the North St. Paul Police Department arrived shortly and parked behind Zappa's car. Zappa approached Wolf and explained why he had stopped the car and what he had learned about defendant's license. He requested that Wolf fill out a traffic citation for driving after revocation and said that he would sign it himself. Zappa and Wolf both testified that Zappa put defendant in the back of Wolf's squad car almost immediately and before Wolf began filling out the citation form.

While Wolf was filling out the form, Zappa walked to defendant's car to see the two passengers. Looking in from the driver's side, he noticed that the knife he had seen previously was now on the console between the driver's seat and the passenger's seat in front. Zappa told the passenger in the front seat to put the knife in the trunk where they would be less tempted to use it foolishly. The passenger took the keys from the ignition, picked up the knife and went to the rear of the vehicle; moments later he came back and returned the keys to the ignition.

There was a dispute in the evidence as to whether Zappa actually saw the passenger put the knife in the trunk. Zappa testified that he remained by the door on the driver's side and that his view was blocked by the open trunk. Defendant, however, claimed that he was still in Zappa's car when this happened and that Officer Wolf had not yet arrived. Defendant testified that he saw Zappa follow his friend to the trunk and stand behind him as he put the knife in the trunk. Wolf testified that he never saw it but he testified that he was busy filling out the citation form and was not watching Zappa or anyone else.

Zappa testified that as he was talking with the passengers he asked them their ages and they both said they were 17. Smelling the odor of alcohol coming from inside the car, he asked them if they had been drinking and they said yes. At this point Zappa walked back and interrupted Wolf, telling him that it appeared that they also had a problem of juveniles who had been drinking and a problem of open bottles. Wolf then came and removed the two from the car and asked them to accompany him to his car.

Zappa testified that, standing on the outside reaching in, he began moving some jackets and looking for open bottles or cans and found three of them, all cans containing malt liquor. In an ashtray on the console he saw a "stone," which is a round device with a hole in it for holding a marijuana cigarette. After removing the stone, he saw a "roach" or butt end of what he believed was a marijuana cigarette. It is not clear from the record whether Zappa opened the ashtray before he saw the "stone" or whether it was already open.

Zappa testified that after he found the "stone" and the butt of the marijuana cigarette, he looked around for Officer Wolf to inform Wolf of what he had found. He could not see Wolf, however, so he went to defendant, who still was in Wolf's car, and

asked him where Wolf was. According to Zappa, defendant told him the other two had fled and Wolf was pursuing them. Zappa then began to fear that perhaps the knife was not in the trunk. He testified that, wanting to warn Wolf if that was the case, he immediately got the keys to defendant's car from the ignition and opened the trunk. Upon opening the trunk he discovered, in plain view, the large quantity of marijuana that formed the basis for the felony charges against defendant. He also found a scale and other items. Zappa then called Lieutenant Garhart Brandt of the North St. Paul Police Department and asked him to come to the scene.

Wolf testified that as he was escorting the passengers to the squad car, one of them fled, and the other pushed him and fled also. He testified that this happened about 8 to 10 feet from defendant's car and that he yelled "halt" before he began chasing the two. Nonetheless, Zappa claimed that he was not aware of the flight of the two until after he found the "stone" and the butt of the marijuana cigarette.

Lieutenant Brandt arrived on the scene shortly after receiving the call from Zappa and before Wolf returned. After talking with Zappa, Brandt, who also knew defendant, gave defendant a *Miranda* warning and then asked for permission to look in his trunk, implying that he would get a search warrant if defendant did not consent. Defendant, knowing that the marijuana had already been discovered, consented.

None of the North St. Paul police officers who testified at the omnibus hearing was questioned about the department's policy about impounding vehicles, but Zappa was questioned about this. He testified that once the juveniles had left it was fair to say that the car "could not be driven away" but would be towed.

The omnibus court made a number of findings, including that Officer Zappa was acting as a police officer outside his own jurisdiction; that if the stop was not a so-called "pretext stop," it was one for a petty misdemeanor traffic violation; that Zappa was not attempting to identify de-

fendant when he asked him for his license because he recognized defendant; that in asking to see defendant's license Zappa was acting as a police officer, not as a private citizen; that the arrest or detention of defendant for driving after revocation was unlawful; that the odor of alcohol established probable cause for an officer but not a private citizen to search for open bottles; that Zappa saw the boy put the knife in the trunk; that, in any event, Zappa had no reason to enter the trunk because if he feared Wolf was in danger he could have called out a warning before Wolf was out of range rather than conducting the search; that Zappa lacked probable cause to believe he would find marijuana in the trunk; that Lieutenant Brandt's request for consent was "window dressing"; and that any consent defendant gave was involuntary. Concluding that there was no valid basis for entering the trunk, the court suppressed the evidence seized, and all derivative evidence such as statements by defendant.

We address, initially, the issue of whether it should make any difference that Officer Zappa was technically outside his jurisdiction. We conclude that it should not.

One way to approach this issue is as we did in *State v. Filipi*, 297 N.W.2d 275 (Minn.1980), and hold that everything Zappa did was within the authority of a citizen to do in making a citizen's arrest. *See*, to the same effect, *Commonwealth v. Harris*, 11 Mass.App. 165, 415 N.E.2d 216 (1981), which cites similar holdings from other states.

An alternative approach, utilized recently by a number of courts and yielding the same result, is to hold that any violation of the law by Officer Zappa in acting outside his jurisdiction was a statutory, not a constitutional, violation and that therefore the exclusionary rule should not apply. *See People v. Wolf*, 635 P.2d 213 (Colo.1981) (declining to use the exclusionary rule as a remedy for a violation of state law by police in acting outside jurisdiction), and *City of Kettering v. Hollen*, 64 Ohio St.2d

232, 416 N.E.2d 598 (1980) (holding that fruits of defendant's arrest, based on probable cause, are not suppressible solely because the officer was outside his jurisdiction in violation of state law). Minnesota cases that arguably would support such a holding include *State v. Wiberg*, 296 N.W.2d 388 (Minn.1980) (refusal to require automatic exclusion of statements obtained as a product of an "unnecessary delay" before arraignment under Minn.R.Crim.P. 4.02), and *State v. Lien*, 265 N.W.2d 833 (Minn.1978) (nighttime execution of a search warrant was a statutory, not a constitutional, violation which under the circumstances of the case did not mandate exclusion of the evidence seized). In this case we need not decide the issue of applicability of the exclusionary rule because we are satisfied that everything Zappa did was within the authority of a citizen to do in making a citizen's arrest.

We next consider the constitutional aspect of Officer Zappa's investigation.

■ (a) We hold that there was a valid, objective basis for the stop. Minnesota cases supporting this include *State v. Kvam*, 336 N.W.2d 525 (Minn.1983); *State v. Pleas*, 329 N.W.2d 329 (Minn.1983); and *State v. McKinley*, 305 Minn. 297, 232 N.W.2d 906 (1975). Officer Zappa observed at least three minor violations of the traffic laws; also, he was justified in suspecting, based on the erratic driving behavior, that there might be something wrong with the driver, that he was either lost or confused.

■ (b) We also hold that Officer Zappa was justified in asking to see defendant's license. *Michigan v. Summers*, 452 U.S. 692, 700–01 n. 12, 101 S.Ct. 2587, 2593 n. 12, 69 L.Ed.2d 340 (1981); *State v. Pleas*, 329 N.W.2d 329 (Minn.1983). Requesting a stopped driver to show his license is standard procedure in stop cases. Any rule that in certain stop cases police cannot request the driver's license would create unnecessary confusion among the police.

■ (c) When Officer Zappa asked defendant to see his license, defendant said that it had been revoked. This clearly justified calling the North St. Paul police to issue a citation.

■ (d) With defendant properly in Officer Wolf's car, Officer Zappa was free to walk back to defendant's car and talk with the two passengers. In no way did this act violate any of defendant's rights. While talking with the passengers, Zappa smelled the odor of alcohol coming from inside the car and asked the two, who were juveniles, if they had been drinking. They said that they had been. Zappa properly brought this situation to the attention of Officer Wolf.

■ (e) Officer Zappa's detection of the odor of alcohol coming from the car gave him probable cause to believe that a search of the passenger compartment would reveal open bottles or cans of alcohol. Pursuant to the motor vehicle exception to the warrant requirement, Officer Zappa was justified in searching anywhere in the passenger compartment where those open bottles or cans might be found. *State v. Veigel*, 304 N.W.2d 900 (Minn.1981). Zappa could not search the trunk for open bottles or cans because it is not unlawful to keep open bottles or cans in the trunk. Minn. Stat. § 169.122, subd. 3 (1982).

■ (f) This brings us to the discovery of the "stone" and the marijuana cigarette butt. This issue is troublesome because the record does not show precisely how Officer Zappa discovered these items. If they were discovered in plain view during the search, then they were discovered properly. On the other hand, if Officer Zappa had to open the ashtray in order to discover them, then, arguably, they were discovered unlawfully. This is so because the scope of a warrantless search of an automobile "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982). As stated in *Ross*, "Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a war-

rant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase." 456 U.S. at 824, 102 S.Ct. at 2172. Ordinarily, it would seem, Officer Zappa could not reasonably have believed he would find an open bottle in the ashtray; if he did open the ashtray, it may be that he was unjustified in doing so. The omnibus court did not make a finding on this point.

 (g) If Officer Zappa properly discovered the "stone" and the cigarette butt, then we believe his discovery provided him with objective probable cause to search the trunk.[1] His discovery of marijuana in the ashtray gave him probable cause to believe that he would find marijuana elsewhere and justified his searching anywhere in the car that he might reasonably expect to find more marijuana. Minnesota cases supporting the notion that discovery of some marijuana in a car gives probable cause to search for more include *State v. Armstrong*, 291 N.W.2d 918 (Minn.1980) (reversing an order erroneously suppressing evidence seized in a warrantless search of the passenger compartment of a motor vehicle after the police lawfully approached the defendant's car, smelled burning marijuana and saw a marijuana pipe being passed), and *State v. Schultz*, 271 N.W.2d 836 (Minn.1978) (holding that officer, who smelled marijuana emanating from lawfully stopped vehicle, had a right to search passenger compartment for marijuana pursuant to motor vehicle exception).

Citing *Wimberly v. Superior Court*, 16 Cal.3d 557, 128 Cal.Rptr. 641, 547 P.2d 417 (1976), however, defendant argues that even if the lawful discovery of a "stone" and a marijuana cigarette butt gave Zappa objective probable cause to look for more inside the passenger compartment, it did not give him objective probable cause to look in the trunk. In *Wimberly*, the court

ruled that the lawful observation of an unusable quantity of marijuana in the passenger compartment of a car gave the police probable cause to search the entire passenger compartment for more but did not necessarily justify a search of the trunk. The court reasoned in that case that the discovery of the unusable quantity of marijuana reasonably tended to support only the inference that more marijuana or contraband would be found in the passenger compartment.

Professor LaFave states that "ordinarily probable cause to search a vehicle will constitute probable cause to search the *entire* vehicle with at least some intensity" but then, moving into a discussion of *Wimberly*, he adds that "this is not inevitably the case." 2 W. LaFave, Search and Seizure § 7.2 at 533 (1978). The recent case of *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), is instructive on this issue. In that case the Court held that, under the motor vehicle exception to the warrant requirement, police officers "may conduct a search of a vehicle that is as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched.'" 456 U.S. at 800, 102 S.Ct. at 2159. Explaining the application of this principle, the Court stated:

A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marijuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search

---

**1.** If there was an objective basis for the search of the truck, Officer Zappa's failure to articulate that basis at the omnibus hearing does not destroy the validity of the search. *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), discussed in 1 W. LaFave, Search and Seizure § 1.2(g) (Supp.1982), and relied upon by this court in a number of cases, including *State v. Pleas*, 329 N.W.2d 329 (Minn.1983); *State v. Ludtke*, 306 N.W.2d 111 (Minn.1981); and *State v. Veigel*, 304 N.W.2d 900 (Minn. 1981).

of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

456 U.S. at 820–21, 102 S.Ct. at 2170–71. As we indicated in discussing the opening of the ashtray, this does not mean that any time police have probable cause to search a car, they are justified in searching the entire vehicle. As the Court added, the scope of a warrantless search of an automobile pursuant to the motor vehicle exception "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." 456 U.S. at 824, 102 S.Ct. at 2172. Repeating the previously-quoted statement from *Ross,* "Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify the warrantless search of a suitcase." 456 U.S. at 824, 102 S.Ct. at 2172. Summarizing, the Court stated, "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." 456 U.S. at 825, 102 S.Ct. at 2172. We conclude that *Ross* supports the search of the trunk in this case *if* it is determined that Zappa lawfully discovered the "stone" and the marijuana cigarette butt in the ashtray. Resolution of the issue of whether he lawfully discovered those items in the ashtray requires a remand since our role is not to decide issues of fact.

(h) An alternative argument advanced by the state to support the opening of the trunk is that Officer Zappa was justified in opening it to make sure the passenger had put the knife in it. This argument is based on Zappa's testimony that he feared the passenger might still have possession of the knife and that he might try to use it against Wolf, who was pursuing both passengers. The problem with this argument is that the omnibus court "resolv[ed] in defendant's favor" the factual dispute of whether Zappa saw the passenger place the knife in the trunk and concluded that Zappa's proffered explanation for entering the trunk was not reasonable under the circumstances. In order to rely on the argument of the state, therefore, we would have to hold that the omnibus court clearly erred in resolving the factual dispute against the state. Compare both *State v. Kvam,* 336 N.W.2d 525 (Minn.1983), and *State v. Hodgman,* 257 N.W.2d 313 (Minn.1977) (each holding that the trial court clearly erred in crucial findings on which the suppression order was based) with *State v. Dillon,* 308 Minn. 464, 242 N.W.2d 84 (1976) (holding that the trial court did not clearly err in disbelieving police officer). Because we have decided to remand for a reopened omnibus hearing, we do not decide this issue.

(i) We hold, finally, that the district court properly concluded that the doctrine of consent cannot be relied upon in this case to justify the opening of the trunk. Defendant's "consent" was clearly tainted by what had already happened. The voluntariness of it is also thrown into doubt by evidence that Lieutenant Brandt implied that the car would ultimately be searched even if defendant did not consent.

We remand for further proceedings in accordance with this opinion.