Willard Gilbert JOHNSON, Respondent,

v.

STATE of Minnesota, DEPARTMENT OF PUBLIC SAFETY, petitioner, Appellant.

No. C7–83–754.

Supreme Court of Minnesota.

July 6, 1984.

Hubert H. Humphrey III, Atty. Gen., Linda F. Close, David L. Valentini, Joel A. Watne, Sp. Asst. Attys. Gen., St. Paul, for appellant.

Richard J. Krambeer, Eagan, for respondent.

AMDAHL, Chief Justice.

This is a discretionary appeal by the Commissioner of Public Safety from an order of a three-judge panel of the Dakota County District Court reversing an order of the county court that sustained the proposed revocation of the driver's license of Willard Gilbert Johnson for violating the implied consent law, Minn.Stat. § 169.123 (1982). We reverse the district court's order.

Between 10 and 10:30 p.m. on July 21, 1981, Scott Morton and a friend left the Perkins Restaurant in Apple Valley and walked to Morton's car. Morton testified that as they were entering his car, they saw a collision between Johnson's car and a yellow Lincoln. The collision, which shook the Lincoln, occurred as Johnson was attempting to back his car into a space near

Morton's car and next to the Lincoln. After colliding with the Lincoln, Johnson drove away, at a very slow speed, and parked in a different space. Morton testified that Johnson got out, looked at his car, then "staggered" into Perkins, "swaying back and forth" as he did so. Morton testified that they looked at the yellow Lincoln and saw that it had been damaged. He admitted that he did not know if the car had been damaged before the collision. Morton and his friend got the license numbers of both cars, then went into Perkins, told a waitress what they had seen and pointed Johnson out to her. Morton and his friend then walked across the street to a different restaurant to get a soft drink.

The first officer responding to a call from Perkins Restaurant was Officer James Sewald of the Apple Valley Police Department, who arrived around 10:30 p.m. Sewald testified that he inspected the two cars, that the Lincoln was damaged on the right rear end, and that the rear bumper of Johnson's car had some scrape marks. He then went into Perkins and talked with Johnson, who said that he did not know anything about the accident but that if he owed anyone anything he would be willing to pay. Sewald testified that Johnson's eyes were glassy and bloodshot, that he smelled of alcohol, and that his gait was unsteady. Johnson accompanied Sewald outside and cooperated fully, producing his driver's license and sitting in the rear of Sewald's squad car when asked to do so.

Officer Brent Moody, also of the Apple Valley Police Department, arrived on the scene when Officer Sewald was walking out of Perkins with Johnson. He noted Johnson's slurred speech and the difficulty he had walking. Morton and his friend returned to the scene and approached Officer Moody, telling him what happened. Moody, who also believed that Johnson was intoxicated, told Morton that he personally could not do anything but that Morton could effect a citizen's arrest of Johnson if he wanted to do so. Morton then effected the arrest.

Subsequently, Officer Sewald read the implied consent advisory to Johnson. Johnson refused to submit to a chemical test. Officer Sewald testified that he invoked the implied consent law on the basis of the citizen's arrest and on the basis of his observations and the statements of Morton. He admitted that he checked only the arrest box on the implied consent advisory form, not the box for collision involving property damage or personal injury, but he stated that he was not relying solely on the arrest as the basis for giving the test.

At the hearing on the petition to rescind the proposed revocation, Johnson's attorney argued that (a) the arrest did not provide a basis for invoking the implied consent law because it was an invalid citizen's arrest, Morton not having had a sufficient basis for concluding that Johnson was under the influence, and (b) the collision did not provide a basis for invoking the implied consent law because Officer Sewald never checked that box on the implied consent advisory and because the Commissioner never proved that the collision caused the damages observed on the Lincoln.

The trial court sustained the revocation. The appeal panel reversed, basically adopting the arguments advanced by Johnson's attorney at the hearing in county court.

Minn.Stat. § 169.123 (1982) provides that the implied consent law may be administered in any of four situations, each requiring the officer administering the test to have reasonable grounds to believe that the driver was driving or operating a motor vehicle while under the influence. The four situations are (1) where the driver has been lawfully arrested for driving while under the influence (a lawful warrantless arrest requiring that the driving or operating has occurred within the presence of the arresting officer or citizen); (2) where the driver has been involved in a motor vehicle collision involving property damage, personal injury, or death; (3) where the driver has refused a preliminary screening test; and (4) where the driver has failed a preliminary screening test.

The Commissioner argues that two of the four independent bases for invoking the implied consent law were present in this case: the one having to do with the driver being validly arrested for driving while under the influence and the one having to do with the driver being involved in a collision resulting in property damage.

■ Whether there was a valid citizen's arrest depends upon whether Morton was justified in concluding that Johnson was under the influence. We believe, as did the trial court, that he was justified in so concluding. In *State v. Hicks*, 301 Minn. 350, 353–54, 222 N.W.2d 345, 347–48 (1974), we stated:

> In numerous cases involving varying fact situations, this court has dealt with the issue of adequacy of foundation for a lay person's opinion concerning whether another person at a certain time was intoxicated or under the influence. In one of these cases, *State v. Simonsen*, 252 Minn. 315, 328, 89 N.W.2d 910, 918 (1958), we stated that "traditionally the foundation required before an opinion regarding intoxication can be given has been testimony concerning observation of manner of walking and standing, manner of speech, appearance of eyes and face, and odor, if any, upon such person's breath." Citing the *Simonsen* case, as well as some others, the trial court in the instant case concluded that [the citizen making the arrest] had not made sufficient observations upon which to base his opinion because although he had smelled defendant's breath, observed his difficulty in standing, and heard his slurred speech, he had not observed defendant's eyes or face.
>
> The issue, then, is whether the absence of one of the signs of intoxication mentioned in *Simonsen* means that there is improper foundation. We hold that it does not. Indeed, we believe that there are numerous more or less objective indicators of intoxication (or, in this case, of being under the influence), which may be observed and relied upon in stating an opinion, not just the four mentioned in *Simonsen*. The preferable approach, then, to determining foundation in these cases is to recognize that there are numerous signs and that one can be intoxicated or under the influence without exhibiting all of the signs.

In this case the appeal panel apparently concluded that the only foundation for Morton's opinion as to Johnson's being under the influence was his having observed Johnson "stagger" and "sway back and forth" as he walked into the restaurant. However, Morton also observed the accident and Johnson's other post-accident conduct, including his very slow driving as he found another parking place. Bearing in mind that we are dealing with probable cause, not proof beyond a reasonable doubt, we believe that the totality of Morton's observations provided him with a reasonable basis for concluding that Johnson was under the influence.

■ We also believe that the invocation of the implied consent law was justified on the ground that a collision involving property damage occurred. Morton did not know whether the Lincoln was damaged before the accident, but he saw the accident and saw the Lincoln shake. Further, immediately after the impact, he observed the Lincoln and saw that it was damaged. Officer Sewald also saw the damage. Bearing in mind that the Commissioner had to prove the requisite facts only by a fair preponderance of the evidence, not beyond a reasonable doubt, we believe that the invocation of the implied consent law was justified on this ground also. The fact that the officer did not check the appropriate box on the form should not make a difference, since there is no requirement that the officer administering the test inform the driver of the specific statutory justification for invoking the implied consent law. Minn.Stat. § 169.123, subd. 2(b) (1982); *State v. Abe*, 289 N.W.2d 158 (Minn.1980) (the only advisory that police are required to give a person under the implied consent law is that mandated by statute). *Cf. State, Department of Public Safety v. Rice*, 323 N.W.2d 74 (Minn.1982) (in implied

consent case officer's articulation of the ground for arrest was not so inadequate as to render arrest unlawful where defendant was unable to show any prejudice resulting from officer's choice of words).

Reversed.