**STATE of Minnesota, Respondent,**

v.

**Michael Scott STOLL, Appellant.**

No. C5–86–1545.

Court of Appeals of Minnesota.

March 17, 1987.

---

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Darrell C. Hill, Asst. Co. Atty., St. Paul, for respondent.

Michael G. Singer, Singer & Singer, Ltd., Minnetonka, for appellant.

Heard, considered and decided by HUSPENI, P.J., and PARKER and LESLIE, JJ.

## OPINION

HUSPENI, Judge.

Michael Scott Stoll appeals from a criminal conviction for possession of cocaine and argues that the evidence used to obtain the conviction should have been suppressed as the fruit of an illegal arrest. We affirm.

## FACTS

On April 22, 1986, James Fave heard the sound of a car stopping suddenly in front of his residence in Roseville. He went to the window and saw appellant repeatedly striking a woman in the head and face. Fave also saw appellant strike a neighbor of Fave's, William Palmer, as Palmer attempted to separate appellant and the woman. Fave told his wife to call the police and went outside to assist Palmer.

The two citizens managed to stop appellant from striking the woman. However, as the woman attempted to leave the scene, appellant pursued and began striking her. Fave and Palmer again separated the two, but appellant again pursued the woman and continued hitting her. After the third time the citizens broke up the scuffle, the woman successfully left the scene and appellant attempted to get into his car. At the Rasmussen hearing in this case, Fave described the events that followed:

A. We didn't let him inside the car.

Q. And who is we?

A. Mr. Palmer and I informed him that he was going—that the police were called, and he was going to be held until the police arrived.

Q. And what was his response to that?

A. Well, he tried to get in the car, Mr. Palmer sat on the seat, and I by the door, and that's as far as we'd let him go. We did not let him inside the vehicle.

\* \* \* \* \* \*

Q. Did you tell the [appellant] on more than one occasion that he was not free to go and that he had to stay until the police came?

A. Two or three times at least.

Q. And did you physically restrain him from leaving?

A. Yes, we did.

Q. And who did you turn the [appellant] over to?

A. To the police when they arrived.

Roseville Police Officer Angus Perkins was the first officer to respond. As he approached the address he had been given, Perkins saw a woman walking down the street. She did not attempt to stop the marked police car, and Perkins did not stop to talk to her. The officer noticed that "[s]he appeared distraught, her face was red, [and] she was holding her hand over her face \* \* \*." The officer drove another 50 yards, and stopped when he saw appellant, Fave and Palmer standing next to appellant's car.

After talking to Fave and Palmer and noticing that appellant had a strong odor of alcohol about him, Perkins took appellant by the arm and led him to the squad car. Before putting appellant in the squad, Perkins searched him, removing his wallet in order to obtain identification. Continuing the search, the officer felt "two hard objects, circular objects" about an inch in diameter. He removed the objects in appellant's right front pants pocket and identified them as balloons filled with a powdery substance. Based on his experience as a police officer, Perkins believed the substance to be some type of contraband

drugs. Perkins handcuffed appellant and placed him in the squad car. The substance in the balloons was identified as cocaine and appellant was subsequently charged with its possession.

Appellant stipulated that the substance was indeed cocaine but moved to suppress the evidence, arguing that it was obtained during a search incident to an illegal arrest by the police officer. The trial court refused to suppress the evidence, concluding that Officer Perkins had discovered the evidence during a pat-down search incident to an investigatory stop.

## ISSUE

Did the trial court err in declining to suppress the cocaine seized from appellant?

## ANALYSIS

■ The trial court based its decision on the conclusion that the police officer's actions constituted a lawful protective weapons search within the scope of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We decline to follow this reasoning, however, because it is apparent that appellant had been validly arrested by Fave and Palmer before Officer Perkins arrived. The officer's search was incident to a lawful arrest, and therefore evidence obtained in the search is admissible at trial.

Minn.Stat. § 629.37 (Supp.1985) provides that a private person may arrest another "for a public offense committed or attempted in the arresting person's presence." An arrest, whether by a police officer or a private person, is defined as "taking a person into custody that the person may be held to answer for a public offense" and includes "actually restraining a person or taking into custody a person who submits." Minn.Stat. § 629.30, subd. 1 (Supp.1985).

■ Fave and Palmer were present as appellant repeatedly struck a woman. Whether the altercation constituted a felony or a misdemeanor assault is immaterial since it was a public offense committed in the presence of the arresting persons. By physically preventing appellant from enter-

ing his car and by requiring that he remain at the scene until police arrived, Fave and Palmer effected an arrest within the statutory definition.

The statutes governing citizens' arrests also provide that:

Before making an arrest a private person shall inform the person to be arrested of the cause of the arrest and require the person to submit. The warning required by this section need not be given if the person is arrested while committing the offense * * *.

*Id.* section 629.38. Because appellant was arrested while committing an assault, it was not necessary that Fave and Palmer announce the reason for the arrest. The statutes also require that "A private person who arrests another for a public offense shall take the arrested person * * * to a peace officer without unnecessary delay." *Id.* section 629.39. Again, Fave and Palmer met the statutory requirements. They held appellant until an officer who had already been summoned arrived and then turned appellant over to the officer.

In accepting custody of appellant from Fave and Palmer, Officer Perkins led appellant to the squad car. Before placing him in the car, the officer conducted a search, removing appellant's wallet and then detecting the cocaine-filled balloons.

The Minnesota Supreme Court addressed the issue of a search conducted after a valid citizen's arrest in *State v. Filipi*, 297 N.W.2d 275 (Minn.1980). In *Filipi*, the arrest was made by police officers operating outside of their jurisdiction, but the court noted that the officers did not rely on incidents of their authority, such as badges and uniforms, in making the arrest. *Id.* at 278. As in this instance, a lawful citizen's arrest was made. Following the arrest, the officers in *Filipi* identified themselves as police officers and conducted a search. The court stated:

The search at issue was conducted under color of police authority and the limits of the Fourth Amendment apply.

*Id.* at 279.

While the *Filipi* court stated that the fourth amendment did not allow seizure of

marijuana from a closed duffel bag taken from the locked trunk of the appellant's automobile, that court did conclude that cocaine taken from the appellant's person in the course of the search "was seized in the course of a lawful search, incident to arrest." *Id.* The evidence was admissible. Similarly, we conclude that the cocaine taken from appellant's person was obtained in the course of a lawful search incident to a citizen's arrest.

Although the basis upon which we determine that the evidence seized from appellant was admissible differs from the basis upon which the trial court made the same determination, we do agree with and affirm the trial court's ultimate ruling.

### DECISION

The trial court did not err in declining to suppress the evidence.

Affirmed.