**STATE of Minnesota, Appellant,**

v.

**Deborah Lynn TILLESKJOR, Respondent.**

**No. C6–92–316.**

Court of Appeals of Minnesota.

Aug. 18, 1992.

Review Granted Oct. 20, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Mark P. Wood, Litchfield, for appellant.

Robert D. Schaps, Litchfield, for respondent.

Considered and decided by NORTON, P.J., and CRIPPEN and DAVIES, JJ.

## OPINION

NORTON, Judge.

This appeal is from a pretrial order suppressing an Intoxilyzer test result and dismissing misdemeanor DWI charges.

## FACTS

In the early morning of September 10, 1991, Litchfield police officer Dennis Hanson observed respondent Deborah Tilleskjor's car exit an apartment complex parking lot in Litchfield. Hanson saw the car "brake suddenly or abruptly" before it entered the street. He continued driving past Tilleskjor's car; however, when it later turned onto Highway 12, Hanson turned around to follow it.

Hanson testified that Tilleskjor's "abrupt stop" was not a traffic violation, and she did not skid or squeal her tires. He had not intended to stop the vehicle, but followed only to get the license number as part of a routine practice to permit follow-up if criminal activity was later discovered in the area.

As Hanson followed Tilleskjor's car on Highway 12, he saw it weave within its traffic lane. Hanson testified this weaving was "on the edge" of the city limits, about three-tenths of a mile from the intersection where Tilleskjor had turned onto Highway 12. Tilleskjor stated that she was outside the city limits when she noticed a police car behind her. Hanson stopped Tilleskjor's car and arrested her for driving under the influence of alcohol.

After an evidentiary hearing the trial court granted the defense motion to suppress the Intoxilyzer test and dismiss the prosecution, finding that "Hanson's observations of weaving within the lane of traffic occurred after the vehicle had exited the city limits." The court concluded that Hanson did not have a reasonable, articulable suspicion to justify a stop based upon conduct occurring while he was within his jurisdiction. The court also held that the stop was not justified as a citizens' arrest because Hanson did not observe any traffic violations or driving behavior outside his jurisdiction which were sufficient to create probable cause to believe that a crime had been committed.

## ISSUE

Did the trial court err in suppressing Intoxilyzer test results because the stop of appellant's car was not lawful?

## ANALYSIS

In a pretrial appeal the state must show clearly and unequivocally that the trial court erred in its judgment and that the error, unless reversed, will have a critical impact on the outcome of the prosecution. *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977). In a case involving fourth amendment suppression issues, this court

accepts the trial court's findings of fact unless they are clearly erroneous, but independently applies fourth amendment case law to the facts so found. *State v. Storvick*, 428 N.W.2d 55, 58 n. 1 (Minn.1988).

■ The trial court found that the conduct for which Hanson stopped Tilleskjor's vehicle occurred outside the Litchfield city limits. Tilleskjor testified she was outside the city limits and Hanson admitted he was at least on the edge of and possibly outside the city limits. Therefore, the trial court's factual finding that the conduct occurred outside the city limits is supported by the testimony, not clearly erroneous, and accepted as fact on appeal.

■ The trial court found that Tilleskjor's "abrupt stop" before entering the street from the parking lot did not create an articulable suspicion justifying a stop. Hanson testified he did not intend to stop the car because of the "abrupt stop." We recognize that the standard for an investigatory stop is minimal, and that a trained officer may draw inferences which would elude an untrained person. *State v. McKinley*, 305 Minn. 297, 303, 232 N.W.2d 906, 911 (1975); *Engwer v. Commissioner of Pub. Safety*, 383 N.W.2d 418, 419 (Minn. App.1986). We cannot, however, draw inferences after-the-fact which the trained officer did not draw on the scene. The record on appeal clearly establishes that the officer did not observe, inside the city, driving behavior creating a reasonable, articulable suspicion.

The state argues that as a police officer, Hanson was justified in making a stop and arrest under Minn.Stat. § 629.40, subd. 3 (1990). This statute concerns the employment status of police officers, describes certain rights and duties accruing when officers act outside their jurisdictions and provides only that police officers, outside their jurisdictions but acting "in the course and scope of employment," are "serving in the regular line of duty." *Id.* The state cites workers' compensation and agency law cases interpreting the meaning of "in the course and scope of employment." This employment statute, however, does not express any legislative intent to extend the *authority* to make extrajurisdictional arrests. We decline to read this statute in a manner which might limit a citizens' constitutional right to be free from unreasonable search and seizure.

■ The state also argues that Hanson had citizens' arrest powers while outside the city limits of Litchfield, and his stop and subsequent arrest of Tilleskjor were therefore lawful. It is well-settled that police officers, while outside their jurisdictions, retain the power to make citizens' arrests. *State v. Halvorson*, 356 N.W.2d 376, 377 (Minn.App.1984). A private citizen may arrest another "for a public offense committed or attempted in the arresting person's presence." Minn.Stat. § 629.37(1) (1990). In order to make a citizens' arrest, a private citizen must have probable cause. *Johnson v. State, Dept. of Pub. Safety*, 351 N.W.2d 2, 5 (Minn.1984). To have probable cause for driving while intoxicated, the citizen must observe "at least one more or less objective indication of intoxication." *Keane v. Commissioner of Pub. Safety*, 360 N.W.2d 357, 359 (Minn. App.1984).

■ In *Halvorson*, an officer observed car tracks leading across a field to a car parked in the adjoining jurisdiction. Concerned for the driver's welfare, the officer went to the car and, while talking with the driver, noted the odor of alcohol and other signs of intoxication. This court upheld that officer's authority to effect a citizens' arrest of the driver for DWI. *Id.* at 377–78. Unlike the instant case, that officer did not stop the vehicle. He observed objective indicia of a traffic violation and approached a stationary vehicle to investigate the welfare of the occupant. *Id.* at 378. While doing so, he observed at least one more-or-less objective indication of intoxication, and he therefore had probable cause. Although no stop was involved, this court stated:

> Where circumstances lead a police officer to suspect something may be wrong with a driver, the officer, acting as a private citizen, is authorized to stop the driver's vehicle.

*Id.* at 377–78 (citing *State v. Schinzing,* 342 N.W.2d 105 (Minn.1983)). We do not read this language to hold that a police officer who, out of curiosity, follows a vehicle out of the jurisdiction is privileged under the citizens' arrest statute to effect an investigatory stop.

In *Schinzing,* the officer, driving on the street dividing his jurisdiction from the adjoining one, observed several traffic violations and "erratic" driving which justified a suspicion something was wrong with the driver. The officer stopped the vehicle and called officers from the local jurisdiction to make the arrest. The supreme court held "everything [the officer] did was within the authority of a citizen to do in making a citizen's arrest." *Id.* at 109. Thus, we read *Schinzing* as permitting a stop only when actual "circumstances," such as traffic violations and other erratic driving, provide an objective basis for concern.

A citizens' arrest may be made for even a petty misdemeanor, such as squealing tires. *State v. Sellers,* 350 N.W.2d 460, 462 (Minn.App.1984). The offending conduct, however, must be attempted or committed in the arresting person's presence. In *Sellers,* the officer observed a significant number of traffic violations, beginning within his jurisdiction and continuing while he pursued the vehicle out of his jurisdiction. This court held that the stop was justified because the officer observed actual traffic violations in both states. *Id.* at 462–63. In contrast, Hanson observed no actual driving violations.

The facts of this case stand in great contrast with those of *State, Dept. of Pub. Safety v. Juncewski,* 308 N.W.2d 316 (Minn.1981), discussed in the dissent. In that case, a city police officer responded to a citizen complaint that a person was lying underneath a vehicle parked on the shoulder of the road. When the officer arrived at the vehicle, located outside the city limits, he observed conduct that objectively gave him probable cause to believe a crime was being committed: the defendant was passed-out inside the vehicle, smelled of alcohol and was unable to respond to questioning. *Id.* at 321. The case did not involve an investigatory stop.

The primary question presented was whether the defendant was in "physical control" of the vehicle, under the DWI statute. The supreme court held that the DWI statute was "remedial" in nature and must be "liberally interpreted in favor of the public interest and against the private interests of the drivers involved." *Id.* at 319. The supreme court held that the defendant, although not actually driving the vehicle, was nonetheless in physical control. *Id.* at 320. The question then became whether the officer had authority to administer a preliminary breath screening test. It is in this context that the court held that the officers were in possession of sufficient "specific and articulable facts as a basis to believe that [defendant] had been driving, operating or controlling his motor vehicle" while intoxicated, as required before administering a preliminary screening test. *Id.* at 321. The court held that because the officers had a specific and articulable basis upon which to administer the preliminary screening test, the test was legally administered and the officer had therefore effected a lawful citizens' arrest after the results of the test indicated the defendant was intoxicated.

In *Juncewski,* the officer did not effect an investigatory stop and the citizens' arrest was lawful because the officer had first observed objective indicia of intoxication. These objective indicia were the "specific and articulable facts" which formed a basis for the belief that a crime had been committed. In the instant case, Hanson was not called by a citizen to the aid of Tilleskjor, and he observed no objective indicia of intoxication. Rather, he first used his police authority to force Tilleskjor to stop, in an effort to obtain the specific and articulable facts which could then form a basis for a citizens' arrest.

Our decision in this case is consistent with the result in another case cited by the dissent, although the facts are distinguishable. In *State v. Filipi,* 297 N.W.2d 275 (Minn.1980), officers set up a drug purchase through an informant. The officers

were outside their jurisdiction when they effected a felony arrest of the supplier while he was driving to deliver the drugs to the informant. The supreme court held that the officers had no police authority for the arrest because they "were not pursuing a suspect who was fleeing their jurisdiction," nor were they "acting in obedience to a jurisdictional authority." *Id.* at 277. The arrest was upheld as a valid citizens' arrest under Minn.Stat. § 629.37(3), however, which permits such arrests "[w]hen a felony has in fact been committed, and [the arresting person] has reasonable cause for believing the person arrested to have committed it."

■ The arrest was upheld as a citizens' arrest because the police "did not establish the basis for the private arrest by using incidents of their authority," rather, "[t]he appearance of police authority entered the picture only after a valid basis for the arrest had been established." *Filipi,* 297 N.W.2d at 278. In the present case, however, Hanson had no valid basis for a private arrest and used his police authority to make an investigative stop; the appearance of police authority "entered the picture" first. We do not believe that a police officer, acting outside his jurisdiction, can first rely upon his police authority to obtain evidence and then use that evidence as the basis for effecting a citizens' arrest. Objective indicia sufficient to establish probable cause that an offense is being committed are required.

■ The state argues that the citizens' arrest power includes the authority to make an investigative stop, based on articulable suspicion. We disagree. Investigatory stops have been recognized as police-citizen encounters which do not rise to the level of formal arrests. *Terry v. Ohio,* 392 U.S. 1, 16–17, 88 S.Ct. 1868, 1877–78, 20 L.Ed.2d 889 (1968). Private citizens do not have police authority to investigate crimes. The citizens' arrest statute does not permit a citizen without statutory grounds for arrest to effect, based on suspicion, an investigative stop in order to develop sufficient probable cause to support the arrest. We disagree with the dissent that such conduct represents merely a "technical" statutory violation. If the citizens' arrest statute is to permit a private citizen who has observed no offense to stop a woman, driving alone late at night and possibly fearful, such permission must be specifically expressed by the legislature, should it so intend.

We need not decide the issue of whether Tilleskjor's conduct of "weaving" within her lane would have been sufficient to establish the required reasonable, articulable suspicion necessary to justify an investigative stop. Hanson was without authority to make an investigative stop because he was outside the jurisdiction of his police authority and such authority is not contained in the citizens' arrest statute. Therefore, Hanson had no probable cause to justify an arrest.

### DECISION

The trial court correctly concluded the investigatory stop was unlawful and correctly suppressed the evidence thereby obtained.

Affirmed.

CRIPPEN, Judge (dissenting).

Facing an issue not previously addressed by Minnesota's appellate courts, the trial court suppressed the statute's Intoxilyzer evidence. This holding depends on a constrained reading of authorities that should lead to another result.

Officer Dennis Hanson had the power to act as a private citizen when making an arrest outside the City of Litchfield. *State v. Filipi,* 297 N.W.2d 275, 278 (Minn.1980). A private person may make an arrest for a public offense committed in his or her presence. Minn.Stat. § 629.37 (1990). It is dispositive in this case to determine whether a police officer acting as a private citizen can stop an individual based on articulable suspicion an offense is occurring. Whether or not this power to stop can be claimed by any citizen, prior Minnesota decisions suggest that a police officer enjoys the power.

In *State v. Schinzing,* 342 N.W.2d 105 (Minn.1983), the supreme court approved a

prearrest investigative stop for an officer acting in another municipality. The court observed that the stop was justified because of three minor violations, but said it was "also" appropriate because the officer

> was justified in suspecting, based on the [driver's] erratic driving behavior, that there might be something wrong with the driver, that he was either lost or confused.

*Id.* at 109. We recited the same principle in *State v. Halvorson*, 356 N.W.2d 376, 377–78 (Minn.App.1984), stating that an officer acting as a private citizen has authority to stop a vehicle "[w]here circumstances lead a police officer to suspect something may be wrong with a driver."

In *State v. Juncewski*, 308 N.W.2d 316 (Minn.1981), the supreme court upheld an officer's extraterritorial arrest of an individual in physical control of a motor vehicle while under the influence of alcohol. *Id.* at 321. Pertinent to the case at hand, the court also examined prearrest police activity of officers having only citizen arrest powers. Although the officers investigated the driver's conduct without making a stop, the court upheld their prearrest alcohol screening because they "had specific and articulable facts as a basis for administering the test." *Id.*

We cannot adequately explain disregard for the preceding authorities. Moreover, there is no policy reason to exclude investigatory stops from the authority of a police officer in circumstances like those in this case. Police intervention, even for laudatory curiosity, is strictly limited by the law, but there are no evident policy reasons for extending those limits by disapproving stops for articulable suspicion arising from observations of ongoing behavior both before and immediately after crossing the boundary of a neighboring jurisdiction.

Finally, the supreme court has suggested that an officer's use of police authority in a neighboring jurisdiction, even if suspect, is a mere technical error which does not justify the suppression of evidence. *See Schinzing*, 342 N.W.2d at 108–09 (discussing rationale, but finding it unnecessary to the case); *see also State v. Smith*, 367 N.W.2d 497, 504–05 (Minn.1985) (suppression is not required for technical statutory violations).

I respectfully dissent.