STATE of Minnesota, LAKE MINNE-
TONKA CONSERVATION DIS-
TRICT, petitioner, Appellant,

v.

Lynn Edward HORNER, Respondent.

No. C5–99–1027.

Supreme Court of Minnesota.

Oct. 12, 2000.

Steven M. Tallen, Tallen & Baertschi, Minneapolis, for appellant.

Marc S. Berris, David G. Roston, Segal, Roston & Berris, PLLP, Minneapolis, for respondent.

Amy Klobuchar, Hennepin County Attorney, Karla F. Hancock, Sr. Assistant County Attorney, Minneapolis, Bonnie LaBatt, Mothers Against Drunk Driving, St. Paul, for amici curiae.

## OPINION

BLATZ, Chief Justice.

The state brings this appeal of the district court's pretrial order to suppress evidence of intoxication and dismiss operating a watercraft while under the influence charges. The state argues that special deputies of the Hennepin County Sheriff's Department, Water Patrol, have authority to investigate the charges as peace officers or as private citizens, and thus their investigation of respondent was authorized and the evidence of intoxication should not be excluded. Alternatively, the state argues that probable cause to arrest respondent existed before the special deputies investigated. The court of appeals affirmed the district court's determination that the special deputies lacked probable cause to arrest respondent before he boarded the patrol boat, and lacked authority to inves-

tigate further to obtain probable cause. We hold that special deputies do not have the authority, either as peace officers or as private citizens, to administer a preliminary breath test or investigate beyond their direct observations of an offense, but that even in the absence of this evidence, the deputies effected a lawful citizen's arrest.

On the evening of September 5, 1998, Stephanie Jung and Joseph Martin were acting as special deputies of the Hennepin County Sheriff's Department, Water Patrol (Water Patrol), patrolling Lake Minnetonka for waterway violations. Special deputies are unpaid volunteers who assist the Hennepin County Sheriff's Department in patrolling the lakes and rivers of Hennepin County. Although Jung and Martin were uniformed and operating a Sheriff's Department motorboat possessing lights, sirens, and a large "Sheriff" logo, they were not licensed peace officers.

At approximately 6:15 p.m., Jung and Martin were docked at the Gray's Bay Marina on Lake Minnetonka. Jung observed a personal watercraft entering Gray's Bay, operated by respondent Lynn Edward Horner.[1] Jung thought that the personal watercraft lacked a required registration decal, in violation of the Lake Minnetonka Conservation District (LMCD) Code.[2] Jung relayed her observation to Martin and both boarded the patrol boat to pursue respondent. Next, Jung and Martin both observed respondent create a large, rolling wake with his watercraft, a possible violation of section 3.02, subd. 4, of the LMCD Code, the "quiet waters" ordinance—classified as a misdemeanor. *See* LMCD Code § 3.02, subd. 4 (1997).

Jung and Martin positioned their patrol boat in respondent's path, flashed the boat's red emergency lights and hailed respondent, saying, "Sheriff's Department, would you please pull alongside our boat." After respondent complied, Jung observed that respondent had an unopened can of beer between his legs, smelled of alcohol, and had bloodshot eyes and slurred speech. Similarly, Martin observed that respondent had a can of beer between his legs, smelled strongly of alcohol, had "extremely bloodshot eyes," and his coordination "seemed to be off considerably."[3]

Martin ordered respondent to board the patrol boat and respondent complied. Jung and Martin both testified at a pretrial hearing that once they had stopped respondent, respondent was not free to leave. In addition, Jung testified that she had not concluded that respondent was under the influence of alcohol before he boarded the patrol boat.

Approximately five minutes after respondent boarded the boat, Martin administered three field sobriety tests to respondent. Martin testified that respondent had difficulty with all three tests. Martin next administered a preliminary breath test to respondent, which respondent failed. Immediately thereafter, Martin called in their position to the peace officer to whom he reported, a deputy sheriff, and arrested respondent for operating a watercraft while under the influence. After arresting respondent, Jung and Martin transported respondent to shore where a Hennepin County Deputy Sheriff administered to respondent an implied consent advisory and a breathalyzer test. The test results showed an alcohol concentration of .14 at approximately 7:35 p.m. The deputy sheriff then took respondent into custody.

Respondent was charged under the LMCD Code with operating a watercraft

---

**1.** Martin testified that the type of watercraft respondent was operating is commonly known as a jet ski.

**2.** The special deputies were apparently mistaken as to respondent's registration violation, as Jung testified that she found no watercraft registration violations and that respondent was not cited for any registration violation.

**3.** Martin also testified that he observed respondent's speech to be slurred, but only after respondent had boarded the patrol boat and submitted to field sobriety tests.

while under the influence, boating with an alcohol concentration of .10 or more, having an alcohol concentration of .10 or more within two hours of operating a motorboat, careless operation of a watercraft (together, "the BWI laws"), and violating the quiet waters ordinance. *See* LMCD Code §§ 3.17, 3.01, subd. 2, 3.02 (1997) (incorporating the boating while intoxicated and personal watercraft provisions of Minn. Stat. §§ 86B.313 and 86B.331, which prohibit the careless operation of a watercraft, and stating the quiet waters regulations, respectively). Before trial, respondent moved to suppress all evidence of intoxication gathered after he boarded the patrol boat and to dismiss all BWI charges because Martin and Jung had no probable cause to arrest respondent for violating the BWI laws.

The district court held a hearing pursuant to *State ex rel. Rasmussen v. Tahash*, 272 Minn. 539, 553–55, 141 N.W.2d 3, 13–14 (1965), to consider the motions. After hearing the testimony of Jung and Martin, the court determined that Jung's and Martin's observations made *before* respondent boarded the patrol boat did not amount to probable cause justifying respondent's arrest for violation of the BWI laws. The court further determined that because Jung and Martin told respondent to board the patrol boat without probable cause to arrest him for violation of the BWI laws, the initial encounter became an investigatory stop. The court then observed that, because special deputies are not peace officers, they do not have peace officers' authority to perform preliminary breath and field sobriety tests with only reasonable and articulable suspicion. Finally, the district court determined that as private citizens, Jung and Martin also lacked the authority to conduct investigations on reasonable and articulable suspicion.

Concluding that the results of the preliminary breath and field sobriety tests were obtained pursuant to an illegal investigatory stop, the district court granted respondent's motion to suppress this evidence and all evidence obtained thereafter, including the sheriff's breathalyzer test.

Accordingly, the district court then granted respondent's motion to dismiss all charges, including a charge alleging violation of the lake's quiet waters ordinance.

The state appealed this pretrial order pursuant to Minn. R.Crim. P. 28.04, subd. 1, which permits prosecutors to appeal as of right a district court's pretrial order if based on a question of law. The court of appeals affirmed the district court's determination that the special deputies lacked probable cause to arrest respondent for violating the BWI laws in the absence of the results of the preliminary breath and field sobriety tests. *See State v. Horner*, 605 N.W.2d 405, 410–11 (Minn.App.2000). The court of appeals also affirmed the district court's conclusions that special deputies do not have the same powers to arrest as licensed peace officers, and that Jung and Martin, as private citizens, had no authority to subject respondent to an investigatory stop. *See id.* at 409–10. However, the court of appeals reversed the district court's dismissal of the quiet waters ordinance charge and remanded for consideration of that charge. *See id.* at 411. The state then appealed to this court.

I.

■■■ We will reverse a district court's pretrial decision to suppress evidence or dismiss only if the state demonstrates that the district court has clearly and unequivocally erred and that the error, unless reversed, will have a critical impact on the state's ability to successfully prosecute the defendant. *See State v. Scott*, 584 N.W.2d 412, 416 (Minn.1998); Minn. R.Crim. P. 28.04, subd. 1(1). We first determine whether, if the district court clearly and unequivocally erred in issuing its order, the error will have a critical impact on the state's case. *See Scott*, 584 N.W.2d at 416. Suppression of "all evidence * * * obtained subsequent to [respondent] being ordered to board Jung and Martin's patrol boat," as the district court ordered, would have a critical impact on the state's ability to prosecute respondent because the pri-

mary evidence of respondent's intoxication would be inadmissible. Thus, we turn to the question of whether the district court clearly and unequivocally erred in issuing the order appealed.

To answer that question, we first determine whether the water patrol officers should be treated as peace officers for purposes of gathering evidence of boating while intoxicated. If so, the results of the preliminary breath and field sobriety tests are admissible. If not, we must determine whether the special deputies are otherwise authorized to administer these tests. If not, the investigation results are not admissible and we must determine whether, in the absence of that evidence, the officers, acting as private citizens, properly arrested respondent so as to support administration of the breathalyzer test by the sheriff pursuant to Minn.Stat. § 169.123, subd. 2 (1998) (allowing administration of blood, breath, or urine test for presence of alcohol upon arrest for violation of Minn.Stat. § 169.121).

## II.

The state claims that the court erroneously failed to view the water patrol officers as peace officers. Specifically, the state argues that special deputies are authorized by the LMCD Code and the Hennepin County Board to enforce the regulations of the conservation district, and are therefore peace officers for these purposes. *See* LMCD Code § 1.09 (1997) and Hennepin County, Minn., Ordinance No. 14 (1996).

Statutory construction is a question of law that we review de novo. *See Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 190 (Minn.1990). Lake Minnetonka, Minn., Conservation Dist. Code § 1.09 states:

> Special deputies duly appointed and sworn by the Hennepin County Sheriff are hereby authorized to enforce the provisions of this Code by the issuance of citations and such other means as permitted by state law.

Similarly, Hennepin County, Minn., Ordinance. No. 14 § 1, states:

> The County Board of Hennepin County ordains that Special Deputies * * * are hereby granted the authority to enforce, through the issuance of citations and such other means as permitted by state law, the provisions of any state or local statutory or regulatory provision governing water, boat, vehicle or traffic safety.

Each of these provisions authorizes the special deputies to enforce water safety laws via citations and "such other means as permitted by state law." We must, however, turn to state law to determine whether it allows special deputies to act as peace officers.

State law does not explicitly recognize a special deputy as a form of peace officer. A peace officer is defined as:

> an employee or an elected or appointed official of a political subdivision or law enforcement agency *who is licensed by the [peace officer standards and training board]*, charged with the prevention and detection of crime and the enforcement of the general criminal laws of the state and who has the full power of arrest, and shall also include the Minnesota state patrol, agents of the division of alcohol and gambling enforcement, state conservation officers, and metropolitan transit police officers.

Minn.Stat. § 626.84, subd. 1(c) (1998) (emphasis added). There is no question the special deputies are not licensed by the peace officer standards and training board and therefore are not included in this definition.

The legislature has provided for part-time peace officers to assist in the protection of the rights and safety of the public. *See* Minn.Stat. § 626.8461 (1998). Like full-time peace officers, these officers also must establish enumerated competency requirements and pass a licensing examination. *See* Minn.Stat. §§ 626.8461–.8463 (1998). Again, there is no question the

special deputies are not included in this description of part-time peace officers.

Moreover, we hesitate to liberally construe the definition of a peace officer. Even licensed part-time officers must act under the supervision of a full-time licensed peace officer. *See* Minn.Stat. § 626.8465, subd. 1 (1998). In addition, it is a misdemeanor for anyone not a peace officer to perform an act reserved by law for licensed peace officers. *See* Minn.Stat. § 626.863 (1998). This statutory scheme illustrates the legislature's concern that anyone exercising law enforcement authority be trained and certified. Because the special deputies lack this particular training and certification, they cannot be considered peace officers.

Law enforcement authority frequently involves administering a preliminary breath test to help determine whether a person is intoxicated. The legislature has mandated that the preliminary screening breath test be administered by a peace officer. *See* Minn.Stat. § 169.121, subd. 6(a) (1998). Field sobriety tests are not directly addressed by statute. Nonetheless, we are reluctant to divine from that absence an intent that persons other than law enforcement personnel are authorized to conduct such tests for intoxication. Perhaps no area of criminal investigation is regulated as thoroughly as that of gathering evidence of intoxication for purposes of our DWI and BWI laws. *See* Minn. Stat. §§ 169.121, subd. 6, 169.123.

Despite this statutory context, the state asks us to hold that unlicensed special deputies have the authority to administer preliminary breath and field sobriety tests. We decline to do so. To find the special deputies have the authority to administer these tests for the enforcement of boating safety laws directly contravenes the statutory provisions regarding breath testing and arguably undermines the legislative scheme for gathering evidence of intoxication and the training, certification, and licensure of peace officers. Because state law does not explicitly treat special deputies as peace officers and does not contem-

plate that anyone other than peace officers will administer tests for intoxication, the phrase "such other means as permitted by state law" in the LMCD Code and Hennepin County Ordinances does not grant special deputies the authority to administer preliminary breath and field sobriety tests. Therefore, we hold that special deputies are not peace officers with authority to administer preliminary breath and field sobriety tests.

### III.

■ Because we hold that special deputies are not peace officers, we consider their actions as equivalent to those of private citizens. A private person may arrest another:

1. for a public offense committed or attempted in the arresting person's presence;
2. when the person arrested has committed a felony, although not in the arresting person's presence; or
3. when a felony has in fact been committed, and the arresting person has reasonable cause for believing the person arrested to have committed it.

Minn.Stat. § 629.37 (1998). The boating while intoxicated charges involved here were misdemeanor offenses. *See* Minn. Stat. § 86B.331, subd. 1(c) (1998) *incorporated into* LMCD Code § 3.17 (1997); *see also* § 169.121, subds. 1(a), 3(b), 11 (1998). Therefore, the special deputies were authorized to arrest respondent if the offenses were *committed in their presence*. *See Smith v. Hubbard*, 253 Minn. 215, 220, 91 N.W.2d 756, 761 (1958) (holding a public offense includes a misdemeanor).

The statute is silent with respect to authorizing citizens to investigate and secure evidence in addition to their direct observations. While we have never addressed this question, we have decided several cases concerning the arrest powers of peace officers outside of their jurisdiction. *See Piotrowski v. Commissioner of Pub. Safety*, 453 N.W.2d 689, 690–91 (Minn.

1990); *State v. Schinzing,* 342 N.W.2d 105, 108–09 (Minn.1983); *State, Dep't of Pub. Safety v. Juncewski,* 308 N.W.2d 316, 321 (Minn.1981); *State v. Filipi,* 297 N.W.2d 275, 277–78 (Minn.1980). The state argues that because these cases hold that a peace officer outside of his jurisdiction has the authority to effect a citizen's arrest, the powers of citizen's arrest must include the power to perform investigations. These cases are distinguishable on their facts, as they all involve the powers of a peace officer outside his jurisdiction, not the powers of a private citizen. Given the comprehensive certification and licensing program for peace officers, determining the authority of a peace officer to investigate crimes outside of the officer's jurisdiction simply involves different considerations than the considerations inherent in allowing private citizens to investigate.

■ We have in the past emphasized the importance of the arresting person's direct observations in establishing a basis for the arrest. *See Smith,* 253 Minn. at 221, 91 N.W.2d at 762 (holding that an offense is committed in the presence of an officer when the officer becomes aware of offense as a result of his sensory perception). Particularly in the context of suspected intoxication, however, we are concerned that a ruling effectively encouraging a citizen to investigate the extent of suspected intoxication may result in injury or other offense to the citizen. Moreover, we note that there is still opportunity for a valid post-arrest investigation because citizens are required to take the arrested person to a judge or peace officer "without unnecessary delay." Minn.Stat. § 629.39 (1998). We therefore hold that citizens are not authorized to conduct investigations after observing a public offense committed in the citizen's presence under Minn.Stat. § 629.37. As such, even if the special deputies are considered private citizens, the district court properly excluded the results of both the field sobriety and preliminary breath tests.

IV.

■ Finally, we must decide whether the citizen's arrest was valid for purposes of authorizing the sheriff to proceed with breathalyzer testing under Minn. Stat § 169.123. Minn.Stat. § 629.37 does not define the quantum of evidence required to determine that a public offense has been committed in one's presence. Without reference to the statute, we have previously used a probable cause standard. *See Johnson v. State, Dep't of Pub. Safety,* 351 N.W.2d 2, 5 (Minn.1984). Probable cause to arrest exists where "the objective facts are such that under the circumstances 'a person of ordinary care and prudence [would] entertain an honest and strong suspicion' that a crime has been committed." *State v. Johnson,* 314 N.W.2d 229, 230 (Minn.1982) (alteration in original) (quoting *State v. Carlson,* 267 N.W.2d 170, 173 (Minn.1978)). On appeal, "we review the district court's findings of historical fact * * * for clear error under the clearly erroneous standard * * *." *State v. Lee,* 585 N.W.2d 378, 383 (Minn.1998). While we give "due weight to inferences drawn from those facts by resident judges," we review de novo the legal conclusion of whether probable cause existed. *Id.* at 382–83 (quoting *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

Before reaching its conclusion, the district court had an opportunity to listen to the witnesses and ascertain credibility. Here, after hearing evidence of what the special deputies observed prior to ordering respondent aboard the patrol boat, the district court concluded that there was no probable cause to arrest respondent for violating the BWI laws. However, the district court's findings do not clearly support its conclusion that no probable cause existed. Instead of setting forth what facts the court determined to weigh against probable cause, the court stated in a memorandum incorporated into its order the conflicting testimony it received with-

out clearly rejecting or adopting it. For example, the court noted:

Martin testified that Horner's eyes appeared red and bloodshot, but he also testified that Horner had not been wearing any eye protection when riding his personal watercraft. Martin and Jung testified that they detected an odor of alcohol after stopping Horner, but they also testified that it is not illegal to consume alcoholic beverages when operating watercraft. Martin and Jung also testified that Horner's speech seemed slurred. * * *

Jung testified at the hearing that in her opinion when Martin ordered Horner into the patrol boat that they did not yet have probable cause to arrest Horner for BWI. It was only after Horner was in the patrol boat and had submitted to the field sobriety tests did Jung and Martin take him into custody. The only indicia as to Horner's intoxication that Jung and Martin testified as occurring before he was ordered into the patrol boat consisted of his red eyes, somewhat slurred speech and the presence of the odor of alcohol. Horner's red eyes could have been the results of little sleep or from riding the personal watercraft without eye protection, and his somewhat slurred speech could have been the way he normally talked. As for the odor of alcohol, it is not illegal to consume alcohol while operating a watercraft. Neither Jung nor Martin testified that the manner in which Horner operated his personal watercraft was indicative of intoxication. Absent some additional indicia of intoxication, Jung and Martin did not initially have probable cause to arrest Horner for BWI.

After receiving this evidence, the court was free to reject all or parts of the deputies' testimony as not credible. While the court may in fact have done just that, the record does not support such an inference on our part. Rather, a fair reading of the court's memorandum suggests that the court credited the special deputies' testimony but found a lack of probable cause because further indicia of intoxication were needed. We disagree with that conclusion.

While probable cause to arrest requires something more than mere suspicion, it requires less than the evidence necessary for conviction. *See State v. Camp,* 590 N.W.2d 115, 119 n. 9 (1999) (citing *State v. Fish,* 280 Minn. 163, 169, 159 N.W.2d 786, 790 (1968)). On this record we hold that there were sufficient facts "such that under the circumstances 'a person of ordinary care and prudence [would] entertain an honest and strong suspicion' that a crime has been committed." *State v. Johnson,* 314 N.W.2d at 230 (alteration in original) (citations omitted).

Accordingly, we hold that the special deputies were not authorized either as peace officers or private citizens to investigate whether respondent was intoxicated, and therefore affirm the district court's order suppressing results of the field sobriety and preliminary breath tests. We further hold that the special deputies properly effected a citizens' arrest, thereby providing a basis for the sheriff's breathalyzer test. Consequently, we reverse the district court's order dismissing the boating while intoxicated charges.

Affirmed in part, reversed in part, and remanded.

PAGE, Justice (concurring in part, dissenting in part).

The court is correct in its conclusion that special deputies are not peace officers. The court is also correct in concluding that Jung and Martin had probable cause to arrest Horner. I write separately for two reasons: first, to more completely set forth the proper probable cause analysis; and second, to express my disagreement with the court's affirmance of the district court's order suppressing evidence obtained from the field sobriety and preliminary breath tests conducted by Jung and Martin.

When reviewing a district court's probable cause determination, we are to give

" 'due weight to inferences drawn from [the historical] facts' " found by the district court, but we review de novo whether probable cause existed. *State v. Lee,* 585 N.W.2d 378, 382–83 (Minn.1998) (citation omitted); *see also State v. Moorman,* 505 N.W.2d 593, 599 (Minn.1993) (noting that this court independently reviews the facts to determine the reasonableness of police conduct because the issue of probable cause affects constitutional rights). We have stated that probable cause to arrest requires sufficient facts "such that under the circumstances 'a person of ordinary care and prudence [would] entertain an honest and strong suspicion' that a crime has been committed." *State v. Johnson,* 314 N.W.2d 229, 230 (Minn.1982) (alteration in original) (citation omitted). The inquiry is objective, not subjective. *See State v. Riley,* 568 N.W.2d 518, 523 (Minn. 1997). When determining probable cause, we consider the totality of the circumstances. *See generally State v. Carlson,* 267 N.W.2d 170, 174 (Minn.1978). While probable cause to arrest requires something more than a mere suspicion, it requires less than the evidence necessary for conviction. *See State v. Camp,* 590 N.W.2d 115, 119 n. 9 (Minn.1999).

Applying these rules to this case can lead to only one conclusion—that Jung and Martin had probable cause to make a citizen's arrest. Before ordering Horner to board the patrol boat, Jung observed that Horner had an unopened beer can between his legs, smelled of alcohol, had bloodshot eyes, and that his speech seemed to be slurred. Before Horner boarded the patrol boat, Martin observed that Horner had a beer can between his legs, smelled strongly of alcohol, had "extremely bloodshot eyes," and that Horner's coordination "seemed to be off considerably." Both

Jung and Martin observed Horner violate the quiet waters ordinance. Each of these facts support probable cause. All of these facts are uncontroverted.[1] While the district court's characterization of these facts differed slightly from the actual testimony,[2] the district court nonetheless relied on Jung's and Martin's testimony in determining that there was no probable cause to arrest Horner. The district court apparently believed that, because the indicia of intoxication testified to by Jung and Martin could have been caused by something other than intoxication, those indicia should be ignored or at least discounted in the probable cause analysis.

In concluding that probable cause did not exist, the district court makes much of the fact that Horner was not wearing eye protection while riding the personal watercraft, that the law does not forbid the consumption or possession of alcohol on watercraft, and that, in Jung's opinion, there was no probable cause to arrest Horner before Horner boarded the patrol boat. The district court's reliance on these facts is misguided. The fact that there may be other reasons for Horner's bloodshot eyes does not mean that his bloodshot eyes do not support probable cause. The question is not whether Horner's bloodshot eyes establish that he was boating while intoxicated; the question is whether his bloodshot eyes support objective probable cause to believe that he was boating while intoxicated. The fact that Horner's bloodshot eyes may have been caused by something other than intoxication does not mean that probable cause did not exist. *See generally State v. Johnson,* 314 N.W.2d 229, 230 (Minn.1982) ("The fact that it later turns out that officers were wrong does not mean that they

---

1. The court notes that a "fair reading" of the district court's memorandum suggests that it credited the testimony of Special Deputies Jung and Martin, but found no probable cause because further indicia of intoxication were needed. I do not believe this is merely a "fair reading" of the district court's memorandum. Given the absence of contravening evidence or any indication that the district

court thought that Jung and Martin lacked credibility, any other conclusion would be inexplicable.

2. For example, Martin testified that Horner's eyes were "extremely bloodshot." The district court indicated that "Martin testified that Horner's eyes *appeared red and bloodshot."* (Emphasis added.)

did not have probable cause at the time they made their assessment.").

Further, the fact that the law does not prohibit the consumption or possession of alcohol on watercraft does nothing to support the notion that Jung and Martin did not have probable cause to arrest Horner. When viewed in light of the totality of the circumstances, the fact that Horner had a can of beer in his possession, whether opened or not, whether legal or not, provides strong support for objective probable cause. Possession of the can of beer, by inference, provides a reasonable explanation for Horner's slurred speech, lack of coordination, and the strong smell of alcohol on his breath, not to mention his blood-shot eyes.

Finally, the fact that Jung testified that she did not believe that probable cause existed before Horner boarded the patrol boat is of no moment. The question is whether there was objective probable cause, not whether Jung subjectively thought there was probable cause.[3] *See State v. Beckman*, 354 N.W.2d 432, 436 (Minn.1984) (officers' subjective belief that they did not have probable cause does not mean that objective probable cause did not exist); *see also Costillo v. Commissioner of Pub. Safety*, 416 N.W.2d 730, 733 (Minn. 1987). Clearly on this record, there was objective probable cause.

It is inconceivable that a person of ordinary care and prudence observing the facts available to Jung and Martin at the time they ordered Horner to board the patrol boat would not entertain an honest and strong belief that a crime had been committed. If observing someone riding a jet ski in violation of a quiet waters ordinance who has the strong smell of alcohol on their breath, has extremely bloodshot eyes, slurred speech, and whose coordination seems to be "off considerably," all the while holding a can of beer, does not create objective probable cause, I am not sure what, if anything, would.

While I agree with the court's conclusion that Jung and Martin had probable cause to arrest Horner, I disagree with that portion of the court's opinion affirming the district court's suppression of the field sobriety and preliminary breath tests they conducted. If Jung and Martin had probable cause to make a citizen's arrest, it seems to me that they were not precluded from investigating further. Particularly disturbing is the court's failure to provide any relevant authority for its conclusion that Jung and Martin were not authorized to investigate whether Horner was intoxicated. The sweeping breadth of the court's decision is also disturbing, as it appears to go so far as to preclude a person, who effects a lawful citizen's arrest, from asking questions of the arrested person. This result is anomalous, to say the least, given that the law does not generally preclude citizens from posing questions to one another. The court notes, without explanation, that it has in the past emphasized the arresting person's direct observations in establishing a basis for the arrest. The problem, of course, is that questions relating to the arresting person's direct observations go to whether the citizen's arrest was valid; they are not relevant and do not go to the question of whether the arresting person may investigate further. And, while I share the court's concern that encouraging citizens to investigate the extent of the arrested person's suspected intoxication could result in injury or other offense to the citizen, that concern does not justify the court's failure to provide a doctrinal basis, constitutional or otherwise, for its decision. The question here is not whether it is wise for citizens to conduct such investigations, but whether there is some authority that precludes them from conducting such investigations.

In reaching its conclusion, the court ignores a plethora of decisional law from other jurisdictions explaining why a person

**3.** If the situation was reversed and objective probable cause was lacking, I would hope that the district court would not rely on the arresting officer's subjective belief that probable cause did exist to support the conclusion that probable cause in fact existed.

who makes a valid citizen's arrest is authorized to investigate further. *See Jack v. Rhay,* 366 F.2d 191, 192 (9th Cir.1966) (upholding a search conducted by the owner of a grain elevator and the retired police officer he employed as a security guard as valid incident to their lawful citizen's arrest; relying on the facts set out by the court in *State v. Jack,* 63 Wash.2d 632, 388 P.2d 566 (1964)); *see also United States v. Rosse,* 418 F.2d 38, 39 (2d Cir. 1969) (upholding search by postal inspectors as valid search incident to lawful citizen's arrest) (citing *United States v. Viale,* 312 F.2d 595, 600 (2d Cir.1963)); *Montgomery v. United States,* 403 F.2d 605, 609 (8th Cir.1968) (same); *Ward v. United States,* 316 F.2d 113, 119 (9th Cir.1963) (same); *United States v. Kriz,* 301 F.Supp. 1329, 1331 (D.Minn.1969) (same).

Because Horner has failed to identify any aspect of the field sobriety and preliminary breath tests that would justify their exclusion had they been administered by a peace officer, the results of those tests are admissible. Therefore, I would reverse that part of the district court's decision suppressing evidence of Horner's intoxication gathered aboard the patrol boat.

STRINGER, Justice (dissenting).

I respectfully dissent from the holding of the majority that the trial court erred in concluding that the deputies did not have probable cause to arrest Horner for boating while intoxicated. The majority supports its conclusion stating, "the district court's findings do not clearly support its conclusion that no probable cause existed." What could be more clear than the trial court's conclusion that the only three bases for probable cause were readily explainable by circumstances unrelated to intoxication? Regardless of whether the trial court did or did not credit the deputies' testimony, its concern for lack of indicia of intoxication is clearly stated and we accord wide deference to its conclusions. *See State v. Camp,* 590 N.W.2d 115, 118 (Minn. 1999) (stating that trial court's finding of probable cause to arrest not reversible unless clearly erroneous). The majority

does not identify other indicia of intoxication and, on the basis of this record, I cannot agree with the majority in substituting its judgment for the trial court's considered review of the facts. The trial court's conclusion as to lack of probable cause was not clearly erroneous.

RUSSELL A. ANDERSON, Justice (dissenting).

I join in the dissent of Justice STRINGER.