STATE of Minnesota, Respondent,

v.

Andy William PRTINE, Appellant.

No. A09–0702.

Supreme Court of Minnesota.

July 13, 2011.

Lori Swanson, Attorney General, Peter R. Marker, Assistant Attorney General, St. Paul, MN; and Mark Rubin, St. Louis County Attorney, Jeffery Vlatkovich, Assistant County Attorney, Duluth, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Steven P. Russett, Assistant State Public Defender, St. Paul, MN, for appellant.

## OPINION

PAGE, Justice.

Appellant Andy William Prtine was convicted of first-degree felony murder for the stabbing death of Brent Ward. In this direct appeal, Prtine argues, in part, that he was denied effective assistance of counsel because his attorney conceded in his closing argument without Prtine's consent that Prtine intended to kill Ward. *State v. Prtine,* 784 N.W.2d 303, 317–18 (Minn. 2010).[1] We held that Prtine's counsel conceded guilt with respect to the element of intent to kill during closing argument. *Id.*

---

1. Prtine's appeal raised four additional issues. We previously held that Prtine was not enti- tled to relief on any of those issues. *Prtine,* 784 N.W.2d at 309–17.

at 318. We retained jurisdiction over the appeal and remanded to the district court to determine whether Prtine acquiesced in his trial counsel's concession of intent to kill. *Id.* After holding an evidentiary hearing, the district court ruled that Prtine acquiesced in his trial counsel's concession that the killing was intentional. Now that the remand proceedings are complete, we must determine whether the record shows that Prtine acquiesced in his trial counsel's decision to concede that the killing was intentional. We affirm Prtine's conviction.

The facts underlying the crime in this case were set out in detail in our initial opinion and will not be repeated here except to the extent necessary to resolve the sole issue before us now. *Prtine*, 784 N.W.2d at 307–09. The relevant facts are as follows. A grand jury indicted Prtine for first-degree premeditated murder and first-degree felony murder for the death of Brent Ward. Prtine admitted that he stabbed Ward, but raised the defense of self-defense.

The evidence at trial established that Ward was a drug dealer who lived in Hibbing, Minnesota. Prtine used drugs and bought drugs from Ward. On the evening of November 9, 2007, a friend found Ward lying face down on the kitchen floor of his apartment in a pool of blood. Ward had been stabbed to death.

The police concluded that there had been a struggle based upon blood splatter in the apartment. Physical evidence, including DNA, tied Prtine to the crime. After the police found blood in Prtine's garage, Prtine said that he would tell the police all he knew about Ward's murder but first he needed to go to the hospital. Prtine had cuts on his arm and a deeper cut on his forearm that he had glued together and camouflaged with a marker to appear as a tattoo.

On November 13, Prtine informed the police that the knife used to stab Ward was in his basement floor drain. Later that afternoon, with his attorney present, Prtine told police that he bought drugs from Ward between 5 and 6:30 p.m. on November 8 and returned between 9 and 10 p.m. to buy more drugs. According to Prtine, an argument ensued, and Ward punched him in the face. Ward then grabbed a knife that Prtine had given him as payment for a previous drug transaction and attacked him. Prtine claimed he gained possession of the knife and began stabbing Ward.

At trial, the medical examiner who conducted the autopsy on Ward's body testified that at least 63 knife wounds had been inflicted on Ward. He further testified that: the injuries were concentrated around Ward's face, hands, and neck; Ward had a 2–1/2 to 3–inch long incision in his chest that had been inflicted with enough force to cut through the leather jacket Ward was wearing and then cut through one of Ward's rib bones and into his diaphragm muscle; two of the stab wounds severed Ward's jugular vein and were fatal; and one of the fatal wounds was made to the back of Ward's neck and involved a long, deep incision, which extended from ear to ear and almost went down to the bone.

During his direct examination at trial, Prtine was asked what he was trying to do during the fight with Ward. Prtine replied, "To get him to stop." When he was then asked, "And what happened," Prtine responded, "He kept coming." On redirect, Prtine was asked, "What do you think would have happened at the time of the fight if Brent Ward had been able to wrestle control of the knife away from you?" Prtine replied, "He would have killed me." Prtine was then asked why he thought that. In response, Prtine said, "Because

of the way he was coming at me, it would have—it would have—it was me or him . . . ." This testimony was consistent with Prtine's November 13 statement to the police.

During closing argument, Prtine's trial counsel conceded the killing was intentional when he said:

> The lesser charges are . . . murder in the second degree. There are two different counts of murder in the second degree. And here [the medical examiner] has furnished one of the key elements. He said that there was definitely an intent to cause the death . . . .

> We understand that in order to raise the defense of self-defense, you have to, first of all, admit that you intentionally caused the death of someone. That's never been missing.

In *Prtine*, Prtine argued he was entitled to a new trial for a number of reasons. 784 N.W.2d at 307–08. We rejected Prtine's claims except for his argument that he was denied effective assistance of counsel when his trial counsel, without Prtine's consent, conceded in closing argument that the killing was intentional. *Id.* at 317–18. We concluded that "counsel's statement that Prtine intentionally caused Ward's death conceded guilt in regard to intent." *Id.* at 318. We explained that "[w]hen counsel for the defendant admits a defendant's guilt without the defendant's consent, the counsel's performance is deficient and prejudice is presumed." *Id.* at 317–18. We noted, however, that when counsel concedes a defendant's guilt, a defendant will not be entitled to a new trial if he or she acquiesced in the concession. *Id.* at 318. The record, however, was unclear as to whether Prtine acquiesced in this concession. *Id.* We retained jurisdiction of this direct appeal and "remand[ed] this case to the district court to determine

if Prtine acquiesced in his trial counsel's concession." *Id.*

At the evidentiary hearing on remand, Prtine and his trial counsel, Jon Rice, testified. Prtine testified that Rice never discussed strategy with him and never told him what his defense strategy would be at trial, although Prtine later admitted that he knew he was raising the defense of self-defense and that Rice showed him jury instructions regarding self-defense. Prtine denied telling Rice that the killing was intentional. According to Prtine, Rice never told him that during closing argument Rice was going to concede that Prtine intended to kill Ward. Prtine claimed that he was unable to hear most of what Rice said in his closing argument and that he did not recall hearing Rice concede that it was an intentional killing. Prtine also could not recall talking with Rice about his closing argument after it occurred. Finally, Prtine testified that he never would have agreed to concede that he intentionally killed Ward.

Rice testified that he was hired to represent Prtine before Prtine gave his November 13 statement to police. Rice explained that "[f]rom the very beginning Andy said to me that it was 'him or me' and the guy wouldn't stop coming at him." Rice said he met with Prtine a dozen times while Prtine was being held in jail and they discussed a trial strategy of self-defense or the "justifiable taking of life" at every meeting. Rice said this strategy was discussed with Prtine before trial and during trial and that Prtine never objected to this strategy.

At around the time of the Rule 8 hearing, Rice showed Prtine a copy of a jury instruction regarding self-defense that included language from the justifiable-taking-of-a-life statute. Rice highlighted language in this jury instruction indicating that the defense would apply even if the

killing was intentional. Rice highlighted this language because he wanted Prtine to know that "[Prtine] could say that he intentionally took the life of Ward" and that the defense would still apply. Rice wanted Prtine to understand this because Prtine had told Rice he wanted to testify, Rice did not think he could talk Prtine out of testifying, and Prtine was telling Rice that the killing had been intentional.

Rice explained that after his closing argument, he asked Prtine if there was anything that he omitted or if there was anything he had done wrong during closing argument. Prtine told Rice he was pleased with Rice's closing argument. Rice admitted, however, that he never told Prtine that he was going to concede that the killing was intentional. He also admitted that Prtine never directly told him that it was okay for Rice to concede that he committed an intentional killing.

The district court concluded that Prtine acquiesced in Rice's concession of guilt with respect to intent to kill. The district court's factual findings included that:

(1) the evidence that Prtine intended to kill the victim was overwhelming;

(2) Prtine "effectively conceded an intent to kill the victim" when he testified that he repeatedly stabbed the victim and that "the victim 'would have killed me ... it was him or me;'"

(3) Prtine's attorney consistently asserted the defense of self-defense throughout the trial;

(4) Prtine, by his demeanor on the witness stand and inconsistent statements regarding what he and his attorney did or did not discuss, was not a credible witness; and

(5) Prtine's attorney was a credible witness who testified that: he discussed trial strategy with Prtine at every step of the trial; he adhered to a consistent strategy of maintaining a self-defense claim; Prtine approved and agreed to that strategy in all stages in the trial; after closing argument, Prtine said he was pleased with counsel's closing argument; and prior to the verdict, Prtine did not object or indicate displeasure with counsel's statement about his intent to kill during closing argument.

The district court concluded that "[a]dmitting intent to kill was an understandable strategy and in fact failure to do so in light of all the evidence of intent to kill ... would probably not be understandable." It further concluded that Prtine was present during his counsel's concession with respect to Prtine's intent to kill and that Prtine "heard and understood what his attorney said during closing argument." Finally, the court concluded Prtine never objected to his attorney's concession of intent to kill "until the Defendant apparently learned that an expression of dissatisfaction might be grounds for a new trial."

We have held that a defendant acquiesces in counsel's concession of guilt "when admitting guilt was an 'understandable' strategy, [defendant] was present at the time the concessions were made, [defendant] understood that his guilt was being conceded, and [defendant] did not object." *Prtine*, 784 N.W.2d at 318 (citing *State v. Pilcher*, 472 N.W.2d 327, 337 (Minn.1991)). Prtine does not contend that he was absent at the time his counsel made the concession or that he made any objection to the concession. Thus, we are left to determine whether the concession with respect to intent to kill is an understandable trial strategy and whether Prtine understood at the time that intent to kill was being conceded. We will consider each of these questions in turn.

### Understandable Trial Strategy

The idea that conceding guilt could be an "understandable trial strategy" first ap-

peared in our decision in *State v. Wipling-er*, 343 N.W.2d 858, 861 (Minn.1984). *See Pilcher*, 472 N.W.2d at 337 (containing first reference to a concession of guilt being an "understandable trial strategy" and citing to *Wiplinger*, 343 N.W.2d at 861). In discussing trial counsel's concession of the defendant's guilt, we said:

> We can think of a few cases where such a strategy might make sense and where a defendant might agree to it. One is where the defense attorney desires to admit that defendant is guilty of one of two charges in the hope of increasing his credibility with the jury and increasing the chance that the jury will acquit defendant on the other charge. Another is where defense counsel admits that defendant is guilty of some lesser-included offense in the hope of persuading the jury to acquit defendant of the greater charged offense.

*Wiplinger*, 343 N.W.2d at 861; *see also State v. Jorgensen*, 660 N.W.2d 127, 133 (Minn.2003) (concluding that defendant acquiesced to defense counsel's understandable strategy of conceding the defendant killed the victim in the hopes of obtaining acquittal on charge of first-degree premeditated murder); *State v. Moore*, 458 N.W.2d 90, 96 (Minn.1990) (noting that "the motivation for counsel's argument cannot be condemned" when the State's evidence about the position of the victim's body "effectively destroyed defendant's story of an accident" and defense counsel was attempting to concede defendant's guilt of the lesser-included offense of manslaughter in the hope of persuading the jury to acquit of the greater charged offense). The strength of the State's case is also relevant in determining whether it was an understandable trial strategy to concede guilt. *See Pilcher*, 472 N.W.2d at 337.

Whether it was an understandable trial strategy to concede guilt is a legal determination that we review de novo. As *Wiplinger* indicates, whether it is an understandable trial strategy to concede guilt depends on whether it would be objectively reasonable to do so, given the facts and circumstances of the particular case. *See* 343 N.W.2d at 861. However, the factual elements of this legal question related to the underlying facts and circumstances of the case are reviewed for clear error. *See State v. Chavarria-Cruz*, 784 N.W.2d 355, 363–64 (Minn.2010) (discussing the standard of review for "fact-intensive, mixed questions of constitutional law" and explaining that the factual components are reviewed for clear error and the application of the legal standard to those facts is reviewed de novo).

The district court found that the evidence of intent to kill was overwhelming, and this finding is not clearly erroneous. Ward had more than 60 stab wounds, one of which was a deep wound across the entire length of the back of his neck. A finding of intent to kill was a near certainty, and claiming the killing was unintentional would not have seemed credible. The district court's finding that trial counsel's concession of Prtine's intent to kill Ward was consistent with Prtine's self-defense claim was also not clearly erroneous. Under these circumstances, it is an understandable trial strategy to concede an intent to kill in order to try to build credibility with the jury in the hope of avoiding conviction on the first-degree premeditated murder charge, and attaining a conviction on one of the lesser-included offenses, while simultaneously trying to bolster the credibility of the self-defense argument and receive an acquittal on all charges.

Prtine nonetheless makes several arguments as to why conceding intent to kill

was not an understandable trial strategy. First, Prtine contends that the concession was based on trial counsel's fundamental misunderstanding of the law of self-defense. Prtine argues that the best indication of why his trial counsel made this concession is what he told the jury: "in order to raise the defense of self-defense, you have to, first of all, admit that you intentionally caused the death of someone." Prtine notes that self-defense can be raised as a defense to an unintentional killing.[2] *See State v. Malaski,* 330 N.W.2d 447, 453 (Minn.1983).

■ This argument lacks merit. Because the issue of whether it was an understandable trial strategy to concede guilt is based on objective notions of reasonableness, trial counsel's subjective belief about the law is not dispositive of this issue. *Cf. State v. Anderson,* 683 N.W.2d 818, 823 (Minn.2004) (stating that in determining whether stop was constitutional because there was objective basis for belief defendant was engaged in illegal activities, subjective belief of the officers was not the focus); *State, Lake Minnetonka Conservation Dist. v. Horner,* 617 N.W.2d 789, 798 (Minn.2000) ("The question is whether there was objective probable cause, not whether [the officer] subjectively thought there was probable cause."). In addition, trial counsel testified at the evidentiary hearing that he understood that the law does not require a defendant to admit that a killing was intentional in order to claim self-defense.

Prtine also argues that conceding intent to kill was not an understandable trial strategy because it precluded the jury from convicting him of second-degree unintentional felony murder, which was one of the lesser-included offenses on which the district court instructed the jury. The State responds that it was an understandable trial strategy because denying an intent to kill would have been absurd, given the evidence in the case, and because admitting an intent to kill was an understandable attempt to preserve the credibility of Prtine's self-defense claim.

Prtine's argument ignores the full record. The district court instructed on the following counts, which we have listed in order of their severity: first-degree premeditated murder; first-degree intentional felony murder; second-degree intentional murder; second-degree unintentional felony murder; and first-degree intentional manslaughter. Conceding guilt can be an understandable trial strategy when an attorney is trying to build credibility with the jury in the hopes of obtaining an acquittal on a greater offense and a conviction on a lesser-included offense. *Wiplinger,* 343 N.W.2d at 861. This rationale applies here, especially considering the least serious count requires an intent to kill. Conceding intent to kill is an understandable strategy because it was done in an attempt to build credibility with the jury on the self-defense claim while simultaneously hoping to obtain an acquittal on the top count and a conviction on the least serious count.

Prtine's argument also ignores what we held in our decision remanding this matter

---

**2.** Prtine argues the district court improperly concluded that conceding intent to kill was an understandable strategy because of Prtine's trial testimony, in which he effectively conceded he intended to kill Ward. Prtine contends that he did not admit at trial that he intended to kill Ward and that the testimony relied on by the district court was merely his explanation of why he believed he had to defend himself by stabbing Ward multiple times. In making our de novo determination of whether it was an understandable trial strategy to concede guilt with respect to intent to kill, we have not relied on whether Prtine effectively conceded the killing was intentional.

to the district court. In his initial brief and at oral argument, Prtine argued that the district court committed reversible error when it responded to a jury question regarding whether the jury had to consider the lesser-included charges if it found Prtine guilty of a greater charge. *Prtine*, 784 N.W.2d at 316–17. Prtine contended that "the jury instructions did not guide the jury to consider the second-degree felony murder count." *Id.* at 317. In rejecting this argument, we concluded that "Prtine was not entitled to the second-degree felony murder instruction" because there was no evidence to support acquitting Prtine of the greater charge of first-degree intentional felony murder and convicting him of the lesser charge of second-degree unintentional felony murder. *Id.* Because Prtine was not actually entitled to have the jury instructed on second-degree unintentional felony murder, the fact that trial counsel's concession may have precluded the jury from convicting Prtine of this charge is immaterial to whether the concession was an understandable trial strategy. In the end, we hold that conceding Prtine's intent to kill Ward was an understandable trial strategy in this case.

### *Understanding that Guilt was Being Conceded*

■ The remaining factor is whether Prtine understood that his guilt was being conceded. The district court found that Prtine heard and understood his trial counsel's concession in closing argument. This is a finding of historical fact that is reviewed under a clearly erroneous standard of review. *See State v. Diede*, 795 N.W.2d 836, 846–47 (Minn.2011); *State v. DeRosier*, 695 N.W.2d 97, 104 (Minn.2005).

Prtine argues that the district court's finding on this factor was clearly erroneous. He acknowledges that the district court was free to reject his testimony that

he did not hear his trial counsel make this concession. He contends, however, that trial counsel's testimony that Prtine told him he was satisfied with his closing argument does not support the conclusion that Prtine was aware Rice conceded the killing was intentional during closing argument.

The district court's finding that Prtine heard and understood his attorney's concession in closing argument that the killing was intentional is supported by substantial evidence in the record. The record establishes that trial counsel talked to Prtine about how his defense of self-defense applied to intentional killings. Thus, the concession related to an issue with which Prtine was familiar. In addition, Prtine provided testimony relevant to his intent when he essentially testified that he had to kill Ward because he thought Ward would have killed him if he got the knife back. Prtine was also present when trial counsel made the concession during closing argument. Prtine never objected to trial counsel's statement. Instead, he told trial counsel he was pleased with his closing argument. These facts support the reasonable conclusion the Prtine heard and understood his attorney's concession in closing argument that the killing was intentional.

Prtine also argues that because the district court noted in its order that trial counsel's concession "did not appear to have such great legal significance to anyone present," there is no reason to believe Prtine, who is not a lawyer, would have understood that trial counsel was conceding the killing was intentional. But there is a difference between understanding, or grasping the meaning of, trial counsel's statement and recognizing its legal significance. The district court's observation does not suggest that anyone present would not have understood what trial counsel admitted in closing argument—the

killing was intentional. Instead, the district court was pointing out that at the time of the closing argument, no one would have realized trial counsel's statement would be the key legal issue in Prtine's appeal.

We hold that the district court's finding that Prtine heard and understood the concession is not clearly erroneous. The finding has evidentiary support in the record, and we are not left with any conviction, let alone a firm and definite one, that a mistake has been made with respect to this finding. *See In re Disciplinary Action Against Coleman,* 793 N.W.2d 296, 303 (Minn.2011) (stating that factual findings will not be reversed "if they have evidentiary support in the record and are not clearly erroneous" and that findings of fact are clearly erroneous when an appellate court "is left with the definite and firm conviction that a mistake has been made" (citations omitted) (internal quotation marks omitted)).

■ Because we conclude that admitting Prtine's guilt with respect to intent to kill was an understandable trial strategy in this case and that Prtine understood that his guilt was being conceded with respect to intent to kill at the time the concession was made, and because Prtine was present when the concession was made and did not object, we hold that Prtine acquiesced in the concession. Because Prtine acquiesced in his trial counsel's concession of guilt with respect to intent to kill, Prtine is not entitled to a new trial based on his ineffective-assistance-of-counsel claim.

Affirmed.

STRAS, J., took no part in the consideration or decision of this case.